Corliss **LAMONT**, on behalf of himself and all others similarly situated, Plaintiff,

v.

**COMMISSIONER OF MOTOR VEHICLES** and R. L. **Polk & Co.**, Defendants.

No. 67 Civ. 1540.

United States District Court S. D. New York.

June 22, 1967.

Rabinowitz & Boudin, New York City, for plaintiff; Leonard B. Boudin, Joan Goldberg, New York City, of counsel.

Louis J. Lefkowitz, Atty. Gen. of State of New York, New York City, for defendant, Commissioner of Motor Vehicles; Mortimer Sattler, Asst. Atty. Gen., of counsel.

Royall, Koegel, Rogers & Wells, New York City, for defendant, R. L. Polk & Co.; Wyllys S. Newcomb, John M. O'Hara, Russell H. Beatie, Jr., New York City, of counsel.

## OPINION

FRANKEL, District Judge.

Suing for himself "and all other owners of motor vehicles duly registered" in New York, plaintiff seeks declaratory and injunctive relief based upon the asserted unconstitutionality of N.Y. Vehicle and Traffic Law, McKinney's Consol.Laws, c. 71, § 202(3), which provides that the Commissioner of Motor Vehicles

> "may, in his discretion, contract with the highest responsible bidder to furnish copies of records of all vehicle registrations for any registration period, or number of periods not exceeding five years in the aggregate, with respect to a given territory. In such event, the fees provided by this section [for searching and supplying copies of such records] shall not apply to copies of records furnished under any such contract."

The defendants are the Commissioner of Motor Vehicles and R. L. Polk & Co., which is said to be in the business, *inter*

alia, of compiling directories and is alleged to have acquired the registration records as "the highest responsible bidder" under the statute. In addition to seeking a declaration that § 202(3) is unconstitutional under the First, Fourth, Fifth, Ninth, and Fourteenth Amendments, along with an injunction "restraining the enforcement and operation" of the statute, plaintiff asks for a judgment of $10,000 against defendant Polk. The court's jurisdiction is said to rest upon 28 U.S.C. §§ 1331, 1343(3), 2201, 2202, 2281, and 2284; 42 U.S.C. § 1983; and the foregoing Amendments to the Federal Constitution.

Plaintiff has moved for the convening of a three-judge court under 28 U.S.C. §§ 2281 and 2284.[1] Defendants oppose the motion, urging that the asserted constitutional issue is "plainly unsubstantial," Ex parte Poresky, 290 U.S. 30, 32, 54 S.Ct. 3, 78 L.Ed. 152 (1933); cf. Bailey v. Patterson, 369 U.S. 31, 82 S.Ct. 549, 7 L.Ed.2d 512 (1962), and that the complaint should, accordingly, be dismissed by a single judge.

The allegations generating these opposing views—taken as true, of course, for present purposes—are: that plaintiff and others like him are compelled to register their motor vehicles with the Commissioner; that defendant Polk, having acquired the registration records, uses the names itself, or sells or leases the lists to others, "for the solicitation through the mails, by telephone and in person, of the registered owners of vehicles, for the purchase of merchandise;" and that the result has been "considerable annoyance, inconvenience and damage to the plaintiff and other registrants by reason of the large volume of advertising and crank mail and other solicita-

tion to which they are subjected." Defendants' actions and the provisions of § 202(3), the complaint concludes, "are in violation of the right of privacy of the plaintiff and other registrants, and constitutes [sic] deprivation of their liberty and property under the First, Fourth, Fifth, Ninth and Fourteenth Amendments to the United States Constitution."[2]

In support of the view that the constitutional issue he raises is sufficiently substantial to warrant the attention of a three-judge court, plaintiff's able counsel presents written argument which reads in its entirety as follows:

"The substantiality of the constitutional question raised by the complaint in this case is shown by the recent cases dealing with the sanctity of a man's home and the privacies of life. Griswold v. Conn., 381 U.S. 479 [85 S.Ct. 1678, 14 L.Ed.2d 510]; Mapp v. Ohio, 367 U.S. 643 [81 S.Ct. 1684, 6 L.Ed.2d 1081]; Breard v. [City of] Alexandria, 341 U.S. 622 [71 S.Ct. 920, 95 L.Ed. 1233]; Public Utilities Comm'n v. Pollack [sic], 343 U.S. 451 [72 S.Ct. 813, 96 L.Ed. 1068]; Monroe v. Pape, 365 U.S. 167 [81 S.Ct. 473, 5 L.Ed.2d 492]; Frank v. [State of] Maryland, 359 U.S. 360 [79 S.Ct. 804, 3 L.Ed.2d 877]; Skinner v. [State of] Oklahoma, 316 U.S. 535 [62 S.Ct. 1110, 86 L.Ed. 1655]."[3]

To be sure, brevity, a somewhat rare delight in courthouses, is not to be discouraged by equating it with "unsubstantiality." It should also be observed that counsel argued engagingly, and at considerably greater length, in oral support of the view that expanding judicial concern for "the privacies of life" shows enough movement in the law to preclude dismissal of his complaint as frivolous.

---

1. Plaintiff's motion papers also request a preliminary injunction, but it was stated upon argument that this application is not being pressed at this time, pending the ruling on whether a three-judge court is appropriate.

2. There is no allegation that plaintiff has demanded exclusion of his name from the list sold by the Commissioner. In re-

sponse to the court's inquiry, the State Attorney General has taken the position that this is immaterial in any event. With that representation, the question is treated on the premise that such a demand by the plaintiff would have been futile.

3. Plaintiff's Memorandum of Law, pp. 5–6.

In the end, however, plaintiff's single sentence of written argument, followed by the citation of seven cases, among which one hurts him and six are inapposite, may fairly be taken as the legal measure of his novel claim.

It would be pedantic to linger over the many distinctions between this case and those involving searches and seizures (Mapp v. Ohio, supra; Monroe v. Pape, supra; cf. Frank v. State of Maryland, supra [4]), the sanctity of the marital relationship (Griswold v. Connecticut, supra), the power of States to *limit* solicitation (Breard v. City of Alexandria, supra), and laws for compulsory sterilization (Skinner v. State of Oklahoma, supra). The citation closest to the mark in plaintiff's list is Public Utilities Comm'n v. Pollak, and that is adverse to him. There, the dispute was over governmental approval of radio broadcasts, including commercial messages, to the captive audiences in publicly franchised buses and street cars. The intrusive assault upon the privacy and serenity of unwilling listeners forced to use public conveyances was so jangling to one normally hardy "victim" on the Supreme Court that he found himself unable to rule dispassionately upon the constitutional issue. 343 U.S. at 466–467, 72 S.Ct. at 822–823 (Frankfurter, J.). The Court majority pointedly recorded (p. 465, 72 S.Ct. p. 822) its expression of "no opinion as to the desirability of radio programs in public vehicles." The Court then proceeded, however, to reject the claim that the outraged listeners could invoke the right of privacy or other constitutionally protected interests to shut out the radio broadcasts. Mr. Justice Black dissented in part on grounds that give little or no comfort to the plaintiff in this case. The dissent of Mr. Justice Douglas, centering on the right of privacy, distinguished "the man on the streetcar," forced to hear the broadcasts, from the person at home who is free to turn off or away from an offensive program. Id. at 469, 72 S.Ct. 813.

■ Strictly speaking, that decision is not squarely in point. It contains important implications, however, that lead *a fortiori* to the defeat of this plaintiff's claim. There is no captive quality in the plight of which plaintiff complains. The mail box, however noxious its advertising contents often seem to judges as well as other people, is hardly the kind of enclave that requires constitutional defense to protect "the privacies of life." The short, though regular, journey from mail box to trash can—for the contents of which the State chooses to pay the freight when it facilitates the distribution of trash—is an acceptable burden, at least so far as the Constitution is concerned. And the bells at the door and on the telephone, though their ring is a more imperious nuisance than the mailman's tidings, accomplish more peripheral assaults than the blare of an inescapable radio.

The information sold by the Commissioner is not vital or intimate. It is, moreover, in the category of "public records," available to anyone upon demand. See Vehicle and Traffic Law § 401(2). Indeed, questions more troublesome than plaintiff's might arise if the State adopted a policy of "privacy" or "secrecy" with respect to such information.[5] What the State has done in practical effect is to tap a small source of much-needed revenue by offering a convenient "packaging" service. This may not be the most inspired kind of government function, although it may be noted that eighteen other States appear to have adopted similar practices.[6] The point of importance, whatever aesthetic or other

4. Overruled in Camara v. Municipal Court, 387 U.S. 523, 87 S.Ct. 1727, 1741, 18 L.Ed.2d 930 (1967).

5. Compare the Act of July 4, 1966, 80 Stat. 250, amending Section 3 of the Administrative Procedure Act to expand the availability of agency records and providing, *inter alia*, that "the burden shall be upon the agency to sustain its action" when it resists disclosure.

6. Cal.Vehicle Code Ann. § 1811 (West Supp.1966); Conn.Gen.Stat.Rev. § 14–49 (r) (1958); Fla.Stat. § 319.25(5) (a), F.S.A. (1965); Ill.Rev.Stat. ch. 95½, §

judgments might be prompted by this activity, is that it reflects a rational and allowable balancing of values by the elected representatives of the people.

In his contrary thesis, plaintiff proposes to stretch the constitutional dimensions of "privacy" far beyond any reasonably foreseeable limits the courts ought to enforce. His claim is in an area where there is no invidious discrimination, no problem of a wrong unreachable at the polls, no suggestion of an affliction confined to a relatively helpless minority. Cf. Reynolds v. Sims, 377 U.S. 533, 553, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964); West Virginia State Board of Education v. Barnette, 319 U.S. 624, 638, 63 S.Ct. 1178, 87 L.Ed. 1628 (1943). His alleged injury, shared with what is probably a majority of the electorate, results from a judgment by the State which appears to be well within its "vast leeway in the management of its internal affairs." Sailors v. Board of Education, 387 U.S. 105, 109, 87 S.Ct. 1549, 1553, 18 L.Ed.2d 650 (1967).

Of course, the fact that a claim is novel does not in itself brand it as unsubstantial. Cf. Joint Anti-Fascist Refugee Committee v. McGrath, 341 U.S. 123, 159, 71 S.Ct. 624, 95 L.Ed. 817 (Frankfurter, J., concurring). The non-mathematical task of the single judge in a case like this is to decide only whether the contention has some plausible chance of success, arguably sufficient to warrant full-scale consideration in the Supreme Court on an appeal as of right from a three-judge district court. Perhaps "unsubstantiality" need not be so plain when a single judge dismisses as it should probably be when a single judge finds the *defense of constitutionality* frivolous (Bailey v. Patterson, supra) and then enjoins enforcement of the state statute. In the latter situation, the protection of three-judge deliberation is withheld though the case is squarely within the primary purpose of the scheme—"that a single judge ought not to be empowered to invalidate a state statute under a federal claim * * *." Id., 369 U.S. at 33, 82 S.Ct. at 551, 7 L.Ed.2d 512; and see Green v. Board of Elections, supra, 380 F.2d at 452. But where, as in this case, a single judge finds the plaintiff's contentions plainly unsubstantial, the normally less major consequence of error is at most to postpone invalidation of the State's law. And that, in the circumstances of this case, is a bearable possibility.

For the reasons above stated, the motion to convene a three-judge court is denied. The motions to dismiss the complaint are granted. The complaint is dismissed.

So ordered.

3–418 (1959); Ind.Ann.Stat. § 47–2625 (Burns' Replacement 1965); Mich.Comp. Laws Ann. § 257.232 (1967); Minn.Stat. Ann. § 168.33, Subd. 3 (1960); Mont.Rev. Codes Ann. § 53–101(8) (1947); Ohio Rev.Code Ann. § 4503.26 (Page 1965); Okla.Stat.Ann. tit. 47, § 22.24 (1962); Pa.Stat.Ann. tit. 75, § 417 (1960); S.C. Code Ann. § 46–120 (1962); Gen. & Special Laws of Texas, Chap. 720 § 36 of H.B. 12 (59th Legislature 1965) and Minute Order of Texas Highway Commission pursuant thereto dated February 16, 1966; Utah Code Ann. §§ 41–1–60 (Supp.1965), 41–1–61 (1953); Vt.Stat. Ann. tit. 23, § 109 (1959); Va.Code Ann. § 46.1–32 (1967); W.Va.Code Ann. § 1721 (140) (1961); Wis.Stat.Ann. § 341.17 (Supp.1967).

Defendant Polk, in an undisputed compilation of statutes which need not be reproduced here, reports its finding of provisions in every State except Kentucky making public records of vehicle registration information. The substantially uniform state practice is not decisive, but it is another item of some weight against plaintiff's constitutional theory. Cf. McGowan v. State of Maryland, 366 U.S. 420, 497, 81 S.Ct. 1153, 6 L.Ed.2d (1961) (opinion of Mr. Justice Frankfurter); Green v. Board of Elections, 380 F.2d 445 (2d Cir. 1967).