**Daniel ROWAN, doing business as American Book Service, et al., Plaintiffs,**

v.

**UNITED STATES POST OFFICE DEPARTMENT; United States Postmaster General, W. Marvin Watson; Attorney General of United States, Ramsey Clark, Defendants.**

**No. 68–1562–R.**

United States District Court
C. D. California.
April 30, 1969.

Gold, Herscher & Taback, Beverly Hills, Cal., for plaintiffs.

Wm. Matthew Byrne, Jr., U. S. Atty., Los Angeles, Cal., David J. Anderson and Harland F. Leathers, Attys., Civil Division, Dept. of Justice. Edwin L. Weisl, Jr., Asst. Atty. Gen. and Larry L. Dier, Asst. U. S. Atty., for defendants.

## MEMORANDUM OF DECISION

HUFSTEDLER, Circuit Judge, CARR and REAL, District Judges.

### CARR and REAL, District Judges.

Plaintiffs herein are all either engaged in the mail order business, distributing, mailing and selling items, books and materials through the United States mail, or in the business of buying and selling lists of names to mail order houses or both.

Each of the plaintiffs have received prohibitory orders issued by the Postmaster General pursuant to the provisions of Public Law 90–206, 81 Stat. 613, now codified as Title 39 U.S.C. § 4009.[1]

A three-judge court convened pursuant to 28 U.S.C. § 2284 now considers the attacks of plaintiffs upon the alleged constitutional deficiencies of Title 39 U.S.C.

I. Title 39 Section 4009 provides:

§ 4009. Prohibition of pandering advertisements in the mails

"(a) Whoever for himself, or by his agents or assigns, mails or causes to be mailed any pandering advertisement which offers for sale matter which the addressee in his sole discretion believes to be erotically arousing or sexually provocative shall be subject to an order of the Postmaster General to refrain from further mailings of such materials to designated addressees thereof.

"(b) Upon receipt of notice from an addressee that he has received such mail matter, determined by the addressee in his sole discretion to be of the character described in subsection (a) of this section, the Postmaster General shall issue an order, if requested by the addressee, to the sender thereof, directing the sender and his agents or assigns to refrain from further mailings to the named addressees.

"(c) The order of the Postmaster General shall expressly prohibit the sender and his agents or assigns from making any further mailings to the designated addressees, effective on the thirtieth calendar day after receipt of the order. The order of the Postmaster General shall also direct the sender and his agents or assigns to delete immediately the names of the designated addressees from all mailing lists owned or controlled by the sender or his agents or assigns and, further, shall prohibit the sender and his agents or assigns from the sale, rental, exchange, or other transaction involving mailing lists bearing the names of the designated addressees.

"(d) Whenever the Postmaster General believes that the sender or anyone acting on his behalf has violated or is violating the order given under this section, he shall serve upon the sender, by registered or certified mail, a complaint stating the reasons for his belief and request that any response thereto be filed in writing with the Postmaster General within fifteen days after the date of such service. If the Postmaster General, after appropriate hearing if requested by the sender, and without a hearing if such a hearing is not requested, thereafter determines that the order given has been or is being violated, he is authorized to request the Attorney General to make application, and the Attorney General is authorized to make application, to a district court of the United States for an order directing compliance with such notice.

"(e) Any district court of the United States within the jurisdition of which any mail matter shall have been sent or received in violation of the order provided for by this section shall have jurisdiction, upon application by the Attorney General, to issue an order commanding compliance with such notice. Failure to observe such order may be punished by the court as contempt thereof.

"(f) Receipt of mail matter thirty days or more after the effective date of the order provided for by this section shall create a rebuttable presumption that such mail was sent after such effective date.

"(g) Upon request of any addressee, the order of the Postmaster General shall include the names of any of his minor children who have not attained their nineteenth birthday, and who reside with the addressee.

"(h) The provisions of subchapter II of chapter 5 (relating to administrative procedure) and chapter 7 (relating to judicial review) of part I of Title 5, United States Code, shall not apply to any provi ions of this section.

"(i) For the purposes of this section—

"(1) mail matter, directed to a specific address covered in the order of the Postmaster General, without designation of a specific addressee thereon, shall be considered as addressed to the person named in the Postmaster General's order; and

"(2) the term 'children' includes natural children, stepchildren, adopted children, and children who are wards of or in custody of the addressee or who are living with such addressee in a regular parent-child relationship."

§ 4009 as applied to their mail order business. Plaintiffs complain that section 4009 is unconstitutional because:

1. It is particularly violative of free speech granted by the First Amendment of the Constitution,

2. It is violative of due process guaranteed by the Fifth Amendment of the Constitution of the United States,

3. It is vague, ambiguous, uncertain and without standards,

4. It provides an unlawful delegation of powers,

and asks that defendants be temporarily restrained and permanently enjoined from enforcing, implementing, acting upon or demanding performance pursuant to section 4009 of the United States Code, or any administrative determinations or order predicated thereon and that section 4009 be declared null and void.

The matter now comes before the Court upon motion for preliminary injunction on behalf of plaintiffs and defendants' motion to dismiss pursuant to Rule 12(b) Federal Rules of Civil Procedure.[2]

### I.
### THE FIRST AMENDMENT AND PLAINTIFFS' COMPLAINTS

■■ Use of the mails for the dissemination and distribution of protected materials,[3] particularly written materials, is well within the protection and guarantee of the First Amendment of the United States Constitution.[4] But plaintiff does not here present a *per se* prohibition of a use of the mails. Execution of any prohibitory order requires:

1. The *addressee* in his sole discretion believes a pandering advertisement to be erotically arousing or sexually provocative, and,

2. *Notice* to the Postmaster General by the addressee and *request* by the addressee of issuance of a prohibitory order.

These provisions make it clear that we must balance free speech when it confronts an unwilling recipient's right of privacy—pre-dating constitutional considerations and constitutionally recognized in United States v. Raines, 362 U.S. 17, 80 S.Ct. 519, 4 L.Ed.2d 524; Breard v. City of Alexandria, 341 U.S. 622, 71 S.Ct. 920, 95 L.Ed. 1233 and Griswold v. State of Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510.

In Breard v. City of Alexandria, *supra,* a municipal ordinance forbidding peddlers and canvassers from going to private residences without an invitation was upheld. The Court in considering the First Amendment claims of magazine vendors says at 637, 71 S.Ct. at 930:

"We recognize the importance to publishers * * * of house-to-house method of selling by solicitation. As a matter of constitutional law, however, they in their business operations are in no different position so far as the Commerce Clause is concerned than the

---

2. Federal Rules of Civil Procedure, Rule 12(b) provides in pertinent part:
"Rule 12. Defenses and Objections—When and How Presented—By Pleading or Motion—Motion for Judgment on Pleadings.
 * * * * *
(b) How Presented. Every defense, in law or fact, to a claim for relief in any pleading * * * shall be asserted in the responsive pleading thereto * * * except the following defenses may at the option of the pleader be made by motion: * * * (6) failure to state a claim upon which relief can be granted, * * *."

3. Reference to "*protected material*" includes all matter other than those declared expressly non-mailable by statute or regulation withstanding the test of constitutional validity.

4. Milwaukee Social Democratic Publishing Co. v. Burleson, 255 U.S. 407, 437, 41 S.Ct. 352, 363, 65 L.Ed. 704 where Mr. Justice Holmes says:
"* * * The United States may give up the postoffice when it sees fit, but while it carries it on, the use of the mails is almost as much a part of free speech as the right to use our own tongues * * *."
See also Speiser v. Randall, 357 U.S. 513, 518, 78 S.Ct. 1332, 2 L.Ed.2d 1460.

sellers of other wares. Appellant * * *, is no more free to violate local regulations to protect privacy than are other solicitors."

Plaintiffs maintain that in balancing the guarantee of First Amendment to freedom of speech and of the press and the right of privacy that the right of privacy must yield, citing to us the decision in Lamont v. Commissioner of Motor Vehicles, 269 F.Supp. 880 (S.D. N.Y.1967).

We disagree—particularly in the posture of what is proscribed by the statute here in question. Judge Frankel had before him the enjoining of a sale of lists which (1) were public records, (2) may have contained names of willing as well as unwilling recipients, and (3) were prior restraints. Here we are concerned with a statute that proscribes mailings to an *unwilling* recipient *only*. To require a commercial enterprise to strike a name from a mailing list seems little burden to impose to guarantee that dimension of privacy to an individual, otherwise helpless in his home, to "turn off' pandering advertisements which may be erotically arousing or sexually provocative to him and his family.

We accept the suggestion of validity of such a statute as pronounced by the Supreme Court in referring to 39 C.F.R. § 44.1(a)[5] in Lamont v. Postmaster General, 381 U.S. 301, at page 310, 85 S.Ct. 1493, at 1498, 14 L.Ed.2d 398, when it says:

"The Government asserts that Congress enacted the statute in the awareness that Communist political propaganda mailed to addressees in the United States on behalf of foreign governments was often offensive to the recipients and constituted a subsidy to the very governments which bar the dissemination of publications from the United States. But the sensibilities of the unwilling recipient are fully safeguarded by 39 CFR § 44.1(a) (Supp. 1965) under which the Post Office will honor his request to stop delivery; * * *."

Title 39 U.S.C. § 4009 is only an implementation of the right of an individual to choose what it is he desires to see and read within his own personal sensitivity and concept of privacy.

It is summed up in Kovacs v. Cooper, 336 U.S. 77, at 88, 69 S.Ct. 448, at 454, 93 L.Ed. 513—

" * * * The preferred position of freedom of speech in a society that cherishes liberty for all does not require legislators to be insensible to claims by citizens to comfort and convenience. To enforce freedom of speech in disregard of the rights of others would be harsh and arbitrary in itself. * * * "

## II.

## DUE PROCESS AND PLAINTIFFS' COMPLAINT

The due process argument of plaintiff has been two-fold—(1) procedural defects and (2) confiscatory aspect of prohibitions on mailing lists.

Procedural Defects:

Title 39 U.S.C. § 4009 meets the requirements of procedural due process, i. e., notice and fair hearing. The statute in clear terms provides:

1. A request from an addressee to the Postmaster General,

2. Issuance of an order by the Postmaster General ordering the sender to refrain from further mailings to a named addressee and deletion of the

---

5. 39 C.F.R. § 44.1(a) (now § 154.1) provides in pertinent part:

§ 154.1 Delivery to persons.

"(a) Delivery to addressee. The addressee may control delivery of his mail. In the absence of a contrary order, the mail is delivered as addressed. * * * The addressee may refuse to accept a piece of mail at the time it is offered for delivery. Also, he may request his postmaster in writing to withhold from delivery for a period not to exceed 2 years specifically described items of foreign printed matter or any obscene, lewd, lascivious, or indecent matter. * * * "

name of the named addressee from mailing lists,

and without penalty of any kind for violation of the order of the Postmaster General. Upon violation of the prohibitory order:

3. The Postmaster General must serve by registered or certified mail a complaint stating the violation,

4. The sender has 15 days within which to respond to the complaint,

5. If requested by the sender—a hearing to determine whether or not a violation has occurred,

the Postmaster General is still not authorized to prohibit the delivery of *any* mail even though it may be violative of the order. Effective enforcement can only be had:

6. After request to and action by the Attorney General in petitioning to a United Staates district court for an order of compliance with the notice.

A violation of the order of the district court may be punished as contempt. A recitation of the procedure makes it abundantly clear that section 4009 comports to the constitutional requirements of due process.

Confiscatory Aspects:

■ Plaintiff complains that section 4009 in permitting the Postmaster General to order deletion of the name of an addressee from a mailing list is unduly oppressive and amounts to a violation of due process. Plaintiffs argue that their lists are not alphabetical and therefore the cost of deletion is approximately $5.00 per name. This estimated cost, without more, appears incredible. But, assuming that plaintiffs have accurately assessed the cost of eliminating a name from a list, such a burden does not amount to a violation of due process guaranteed by the Fifth Amendment of the Constitution. Particularly when in the context presently before this Court it is being applied to commercial enterprises.

We do not read this statute to require that a sender refrain from *any* future mailings but only from mailings of "such materials," i. e., "any pandering advertisement which offers for sale matter which the addressee in his sole discretion believes to be erotically arousing or sexually provocative." Nor do we read the statute to prevent "sale, rental, exchange or other transaction" of a mailing list from which the name of a complaining addressee has been deleted. Plaintiffs' contentions to the contrary are without merit.

## III.

## VAGUENESS, AMBIGUITY, STANDARD AND UNLAWFUL DELEGATION OF POWER

■ Plaintiff charges generally vagueness, ambiguity, lack of standard and unlawful delegation of power. It should be noted at the outset that no effective or threatened *prohibition* of free use of the mails is effected until hearing and order of an appropriate United States district court.

The standard could hardly be clearer than provided here. For the statute provides that the sender can be ordered to refrain from mailing "erotically arousing or sexually provocative" materials, *as determined by the addressee,* requesting issuance of an order of the Postmaster General. It is after the *first mailing* that all other proposed mailings are to be measured by the objectionable material of such first mailing.

It is only after determination of a United States district court *upon trial* and order that a sender is in danger of any penalty for mailings subsequent to the order of an appropriate United States district court but not of any order issued by the Postmaster General.

That the addressee may initiate the process, in which eventually the Attorney General "is authorized to make application, to a district court of the United States, for an order directing compliance with such notice," as part of a comprehensive scheme to guarantee to both parties, addressee and sender, a hearing before the district court of their respective rights and duties, comports with all

notions of fairness and due process expressed in the Constitution. The discretion given the addressee affects only the individual asserting his and his minor children's right of privacy. It sets no standard to be applied to anyone else or to the community at large. It does not infringe the right of any individual to accept or reject ideas in the marketplace of free expression. We find no unlawful delegation of power in validating this statute.

## IV.

### PRELIMINARY INJUNCTION AND THE MOTION TO DISMISS

■ Where injunctive relief is sought, plaintiffs must show that there is a reasonable probability that they will prevail on the merits; that the danger of irreparable damage is immediate; and that they have no adequate remedy at law.

■ Plaintiffs fail in each respect. The statute provides a specific remedy at law *before* plaintiffs can be compelled to do anything. We see no reason that injunctive relief should be granted.

Since no factual issue is in dispute, having determined that Title 39 U.S.C. § 4009 is constitutional and provides an adequate forum in which plaintiffs may litigate any dispute they may have with any of the defendants herein, the motion to dismiss, treated as one for summary judgment under Rule 56, as required by Federal Rules of Civil Procedure Rule 12(b), is granted.

Pursuant to Rule 52 of the Federal Rules of Civil Procedure, this opinion shall constitute the findings of fact and conclusions of law.

The Clerk is instructed to enter judgment for defendants.

HUFSTEDLER, Circuit Judge (specially concurring).

Although I agree that section 4009 can be sustained constitutionally, I cannot accept the reasoning of the majority opinion. In my view the statute can be salvaged by meticulously construing its provisions to shrink its loosely woven fabric to constitutional size and by applying to the statute, as thus construed, settled constitutional doctrine. It cannot be saved by submerging the First Amendment problems, as does the majority opinion, by invoking an amorphous concept of the right of privacy.

Congress enacted section 4009 in response to vocal public demand that something be done to check the flow of advertisements for erotic publications that were mailed to unwilling addressees.[1] In drafting section 4009, Congress was fully aware that it was legislating in an atmosphere permeated with the imperatives of the First Amendment as well as one charged with the emotional voltage generated by the subject of pornography.[2] The targets of section 4009 are the commercial purveyors of pornography. Because criminal penalties for sending obscene matter through the mails have been largely ineffective in controlling the stream of printed sludge coursing through the mails, Congress devised the nonpenal regulatory scheme found in section 4009, whereby addressees can set in motion prohibitory orders to prevent senders of such material from mailing further offending matter to them.

The congressional aim is stated in the first paragraph of section 4009:

"(a) Whoever for himself, or by his agents or assigns, mails or causes to be mailed any pandering advertisement which offers for sale matter which the

---

1. "Hundreds of thousands of complaints are received annually by the Post Office Department and individual Members of Congress about the repeated receipt of unsolicited mail which is obscene, obnoxious, or otherwise offensive to the recipient." Senate Report No. 801, U.S. Code Cong. & Admin.News 2258, 2294, 90th Cong., 1st Sess. (1967).

2. Senate Report No. 801, *supra* note 1; Hearings on H.R. 7977 Before the Senate Comm. on Post Office and Civil Service, 90th Cong., 1st Sess. (1967).

addressee in his sole discretion believes to be erotically arousing or sexually provocative shall be subject to an order of the Postmaster General to refrain from further mailings of such materials to designated addressees thereof."

The remaining provisions of the statute establish the procedure to enforce the quoted paragraph. Subsection (b) authorizes the Postmaster General, on request of the addressee, to issue an order directing the sender "to refrain from further mailings to the named addressees"; subsection (c) says that the order shall direct the sender "to delete immediately the names of the designated addressees from all mailing lists owned or controlled by the sender" and "shall prohibit the sender * * * from the sale, rental, exchange, or other transaction involving mailing lists bearing the names of the designated addressees"; subsection (d) authorizes the Postmaster General to institute proceedings in the Federal District Court to enforce his prohibitory order; subsection (e) confers jurisdiction on the District Court to issue a compliance order enforceable by contempt proceedings; and subsection (h) makes inapplicable the provisions of the Administrative Procedure Act.[3]

The First Amendment challenge to section 4009 presents delicate constitutional problems. The statute is a novel combination of private and state action designed to limit the sending of a particular kind of advertising through the mails.

The right to send mail and the right to receive mail are reciprocal rights protected by the First Amendment. As Mr. Justice Holmes observed: "The United States may give up the postoffice when it sees fit, but while it carries it on the use of the mails is almost as much a part of free speech as the right to use our tongues * * *." Milwaukee Social Democratic Pub. Co. v. Burleson (1921) 255 U.S. 407, 437, 41 S.Ct. 352, 363, 65 L.Ed. 704 (dissenting opinion); Lamont

v. Postmaster General (1964) 381 U.S. 301, 305, 85 S.Ct. 1493, 14 L.Ed.2d 398.

First Amendment rights are not absolutes. As precious as is the freedom of expression, that right may be burdened or otherwise restricted in favor of contravening constitutional values of such compelling proportions as to take precedence over First Amendment guarantees. (E. g., Schenck v. United States (1919) 249 U.S. 47, 39 S.Ct. 247, 63 L.Ed. 470; cf. New York Times Co. v. Sullivan (1964) 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686.)

The majority opinion holds that the right of an addressee not to receive mail is a "right of privacy," which is a constitutional right of greater weight than is the sender's First Amendment right. The interest protected by section 4009 is the addressee's interest in being free from the emotional distress he suffers from reading the contents of advertising which offends him or from knowing that his young children have been thus exposed to such advertising. The addressee's interest is a private right, but it is not a constitutional right of privacy. The term "constitutional right of privacy" is admittedly a loose one, but that concept is not elastic enough to encompass in the same category a right to be free from exposure to offensive advertising, a right to be free from the intrusion of one's home by a peddler's insistent ringing of one's doorbell (Breard v. City of Alexandria (1951) 341 U.S. 622, 71 S.Ct. 920, 95 L.Ed. 1233), and the right to be free from public prying into one's marital bedroom (Griswold v. State of Connecticut (1965) 381 U.S. 479, 485, 85 S.Ct. 1678, 14 L.Ed.2d 510).

We are not here concerned with the undisputed right of every citizen to read or refuse to read his mail, to keep it or to throw it away. We enter First Amendment territory because the Government interposes itself between the sender and the addressee's mail box to relieve the addressee from seeing some of his mail.[4] That interposition is not un-

---

3. The full text of § 4009 is set forth in the majority opinion.

4. *Compare, e. g.,* Reitman v. Mulkey (1967) 387 U.S. 369, 87 S.Ct. 1627, 18 L.Ed.2d

constitutional simply because private rights of addressees are favored over addressors. Not everything mailed is wrapped in impervious First Amendment paper. The extent to which the Government can restrict the use of the mail depends in large part upon what is mailed. The Government can and has forbidden the transmission of obscenity through the mails. (18 U.S.C. § 1461.) Obscenity is not speech protected by the First Amendment. (Stanley v. Georgia (April 7, 1969) 29 CCH S.Ct.Bull. B1339; Ginzburg v. United States (1966) 383 U.S. 463, 467–468, 86 S.Ct. 942, 16 L.Ed.2d 31.) The "pandering advertisements" to which section 4009 is directed are not contraband, as is apparent from the fact that such advertisements can be mailed to anyone who wants them, but it does not thereby follow that the material is completely insulated by the First Amendment.

The degree to which the First Amendment applies to protect speech varies with society's interest in the content of that speech. "Purely commercial advertising" has never received the same kind of constitutional protection as that afforded to expressions of greater public concern. The commercial element does not altogether destroy its quality as protected speech, but it does substantially reduce the weight of the expression on constitutional scales. (Compare Breard v. City of Alexandria, supra, 341 U.S. 622, 71 S.Ct. 920, 95 L.Ed. 1233, with Martin v. City of Struthers (1943) 319 U.S. 141, 63 S.Ct. 862, 87 L.Ed. 1313.) Commercial advertising can be reasonably regulated without offending the First Amendment. (Valentine v. Chrestensen (1942) 316 U.S. 52, 62 S.Ct. 920, 86 L.Ed. 1262; see Ginzburg v. United States, supra, 383 U.S. at 474 n.17, 86 S.Ct. 942; New York Times Co. v. Sullivan, supra, 376 U.S. at 265–266, 84 S.Ct. 710.) When to the commercial element there is added a peculiar quality of offensiveness which adheres to solicitations

appealing to the erotic interest, there is even greater public interest in sustaining Congress' scheme of regulation against a First Amendment attack. (Cf. Stanley v. Georgia, supra.)

Plaintiffs do not claim that their mailings which resulted in prohibitory orders are anything other than strictly commercial solicitations. Plaintiffs' affidavits reveal that they have no desire to send their advertisements to anyone who is not interested in buying plaintiffs' wares. There is not a whisper in the record before us suggesting that the plaintiffs' publications contained any "editorial advertising," as did the newspaper advertisements discussed in the New York Times case. The plaintiffs are looking for customers, not converts. Indeed their real complaint about the impact upon them of section 4009 is that it costs them more than they care to pay to weed out the unwilling from their mailing lists and the merchandising value of their lists is accordingly reduced.

Were we dealing only with plaintiffs' advertising our First Amendment problems would be over. But we are not. The face of the statute is attacked for overbreadth. As plaintiffs read the statute, the addressee has been delegated the power to define "pandering advertisements" not only for himself, but also for the Postmaster General, the Attorney General, and the courts. No objective standard exists against which to measure the addressee's characterization. Even if the definition of "pandering advertisements" were not committed solely to the addressee, plaintiffs contend that the meaning of the term is so vague that no mailer can know whether or not his communication will fall within section 4009 and thus will subject him to prohibitory orders. The effect of section 4009, say the plaintiffs, is to chill communications which are fully protected by the First Amendment.

Were we compelled to read section 4009 as giving the addressee unfettered

S30. An individual can practise racial discrimination in pursuing his social relationships, but there are constitutional limitations on the power of the state to help him to do so.

discretion finally to decide which publications mailed to him are "pandering advertisements" or were we obliged to construe the prohibitory order authorized by section 4009 as encompassing all further mailings of any kind from the sender to the addressee, the statute would be overbroad. As thus read, the statute would regulate expression beyond the extent necessary to achieve the congressional purpose of enabling addressees to "turn off" the flow of pandering advertisements and it would cross the boundaries protected by the First Amendment. An addressee with a closed mind and a vivid imagination could decide that almost any kind of mail he received was a "sexually provocative" pandering advertisement. Congress exhibited no intent to give an addressee such unlimited power to stop communications from an addressor whose ideas were disagreeable to him.[5] But plaintiffs' sweeping construction of the statute is not compelled either by the language of the statute or by its legislative history.

As I construe the statute, the addressee is given the power to characterize the content of his mail for the purpose only of deciding whether or not he will request the Postmaster General to issue a prohibitory order. Neither the addressee nor the Postmaster General is delegated the power to decide which senders are within the purview of the statute. That power ultimately rests with the District Court and no sanctions against the sender can be applied until the District Court makes the decision committed to it. (*Cf.* Freedman v. State of Maryland (1965) 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649.)

Congress defined the senders to whom the statute applies in the opening lines of subsection (a) of section 4009: "Whoever for himself, or by his agents or as-signs, mails or causes to be mailed any pandering advertisement * * *." The addressee's concern is limited to that tentative identification of the sender as is necessary to permit him to frame a complaint to the Postmaster General. It is not the addressee's burden to investigate the source of the offensive mail. Neither is it the business of the addressee to determine whether the sender is a person who has mailed "any pandering advertisement." The statute does not commit that responsibility to him. Rather, it gives him the discretion only to decide whether the advertisement "offers for sale matter which the addressee * * * believes to be erotically arousing or sexually provocative" as a prelude to potential court action.

The Postmaster General does no more than locate the sender and send to him the notice written by Congress in subsections (b) and (c). The only decisions the Postmaster General makes are the decision to file a complaint against a sender for alleged violation of the order, and a decision to pass the matter along to the Attorney General if, after a requested hearing, he chooses thus to seek enforcement of the order.

The term "any pandering advertisement" is not so vague as to draw within it communications entitled to full First Amendment protection. The "advertisement" component means commercial solicitation, an invitation to purchase a product. Congress' intent to refer to commercial solicitation alone is evidenced by its use of the words "which offers for sale" immediately following the term "any pandering advertisement." The boundaries of "pandering" cannot be defined with the precision of a legal description of a parcel of real property, but the meaning of the term is not hopelessly elusive. As used in the statute, "pander-

---

5. *See* Schwartz, The Mail Must Not Go Through—Propaganda and Pornography, 11 U.C.L.A.L.Rev. 805, 858 (1964): "If members of society can effectively cut themselves off from being contacted through the mail by different political parties, sponsors of unpopular views or any of the thousands of organizations which have messages to communicate, one major social avenue for balanced consideration of the issues of the day will have been destroyed. Government has no business encouraging isolation of individuals from the expression of views by others."

ing advertisement" means a commercial solicitation bearing on its face textual or graphic matter designed to appeal solely to the erotic interest of the addressee. (*Cf.* Ginzburg v. United States, *supra*, 383 U.S. at 467–468, 86 S.Ct. 942.)

Plaintiffs say that the scope of the prohibitory order prescribed by section 4009 necessarily embraces publications other than pandering advertisements, because, as they read the statute, a sender is thereby forbidden to mail anything at all to a complaining addressee. (*Cf.* Summerfield v. Sunshine Book Co. (1954) 95 U.S.App.D.C. 169, 221 F.2d 42.) I agree with the majority that the scope of the order is not that broad, but unlike the majority, I believe it is necessary to set out the reasons for that conclusion. Plaintiffs interpret the language of subsections (b) and (c) describing the contents of the order as a direction to the sender "to refrain from further mailings to the named addressees" [6] as if it said "all further mailings of whatsoever kind." I read the words "further mailings" as a reference to "further mailings of such materials," the language of subsection (a), and I interpret the words "such materials" as a reference to "any pandering advertisements," the term used in the opening phrase of subsection (a). Thus I read the phrase used in subsections (b) and (c) as if Congress had spelled out the words which are implied from the context of the statute: "from * * * further mailings of such pandering advertisements." (*Cf.* Summerfield v. Sunshine Book Co., *supra*.)

Plaintiffs argue that the effect of a prohibitory order, even as thus narrowly construed, is to deprive them of their property without due process of law. The argument assumes that plaintiffs have a property right in their mailing lists which is impaired by the prohibitory

order. The assumption is a dubious one, but even if the assumption is accepted, *arguendo*, it does not help the plaintiffs. Even the plaintiffs do not suggest that they have a property right in each name on the list. All the prohibitory order does is to direct the plaintiffs to remove the names of complaining addressees before they can trade in the lists. Plaintiffs admit that the complainers are not valuable addressees and that they do not want them on their lists. They are in no position to argue that they have been hurt by a direction to jettison names which are worthless to them.

If it is assumed that plaintiffs were entitled to raise the due process argument with respect to senders other than themselves, again a dubious assumption, the statute is still immune from due process attack. The prohibitory order is not in the nature of a sanction. Nothing happens to a recalcitrant sender who refuses to comply with the Postmaster General's order. No penalty of any kind is or can be imposed until the District Court has issued a compliance order, the sender has disobeyed that order, and the District Court has held him in contempt. (39 U.S.C. § 4009, subsec. (d) and (e).) Before a compliance order can be issued by the District Court, the sender is entitled to an adversary hearing in which he is accorded an opportunity to present fully all of his defenses, including constitutional ones. (*See* Reisman v. Caplin (1964) 375 U.S. 440, 84 S.Ct. 508, 11 L.Ed.2d 459.) At that hearing, the court and not the addressee, the Postmaster General, or the Attorney General decides the question: Was the sender a person who has mailed or caused to be mailed any pandering advertisement? Due process is fully satisfied by that procedure.

I conclude that section 4009 is not unconstitutional on its face or as it has been

---

6. Plaintiffs find some support for their construction in the legislative history. (*E. g.*, Senate Report No. 801, *supra* note 1.) But the overriding intent was to enact a constitutional statute which would simultaneously shield senders of materials entitled to First Amendment protection from interference with their mailing rights and give to addressees offended by solicitations from commercial pornographers a remedy for their distress.

applied to the plaintiffs, under the provisions of the First and Fifth Amendments to the United States Constitution. The statute as I construe it is not overbroad and its terms are not fatally vague. It does not unlawfully delegate power to the addressees, to the Postmaster General, or to the Attorney General. Its application to the plaintiffs does not deprive them of their property without due process of law. The remaining contentions of the parties are adequately discussed in the majority opinion, or are points which require no comment.