This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Appellant Lisa Haefka ("Haefka") appeals the decision of the Lorain County Court of Common Pleas granting summary judgment in favor of Defendants-Appellees W.W. Extended Care Center and Ohio Extended Care ("Appellees"). We affirm.
 I.
Appellees operate a nursing home and an extended care health facility in Lorain, Ohio. In 1992, Creola Faye Pitts ("Pitts") was admitted to the facilities due to emphysema and her inability to care for herself. Pitts was Haefka's grandmother. When Pitts was admitted to the nursing home, the admission paperwork listed Pitts' daughter, Gwendolyn Hughes ("Hughes"), as a guarantor and primary contact. Approximately one year later, the nursing home changed the primary contact name to that of Haefka at Hughes' and Haefka's direction. Haefka did not sign any documentation stating that she would be the guarantor of Pitts' medical care expenses.
Pitts died in August of 1996. Thereafter, Haefka claims that Appellees sent her billing statements for the unpaid balance for the care Appellees provided to Pitts during August 1996, her last month of medical care. The bills were sent monthly from September 1996 to approximately January 2000.
On October 13, 1999, Haefka sued Appellees, claiming emotional distress and outrage. The Lorain County Court of Common Pleas ordered the parties to submit the claim to arbitration, whereby Haefka was awarded $17,000. Appellees appealed that decision to the court, which set the matter for jury trial.
On October 17, 2000, Appellees filed their motion for summary judgment, arguing that no genuine issue of material fact existed and Appellees are entitled to judgment as a matter of law. Appellees argue that summary judgment was appropriate because Haefka could not prove that Appellees' conduct was outrageous or that Haefka suffered severe emotional distress. Haefka filed a brief in opposition. Haefka also filed a motion for leave to amend her complaint in order to add the cause of action for invasion of privacy, which the trial court granted. On May 8, 2001, the trial court granted Appellees' motion for summary judgment.
Haefka timely appealed, raising one assignment of error.
 II. Assignment of Error THE TRIAL COURT ERRED IN ENTERING SUMMARY JUDGMENT FOR [APPELLEES].
In her only assignment of error, Haefka asserts that the trial court erred in granting summary judgment to Appellees. We disagree.
An appellate court reviews an award of summary judgment de novo.Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102, 105. We apply the same standard as the trial court, viewing the facts in the case in the light most favorable to the non-moving party and resolving any doubt in favor of the non-moving party. Viock v. Stowe-Woodward Co. (1983),13 Ohio App.3d 7, 12.
Pursuant to Civil Rule 56(C), summary judgment is proper if:
 (1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.
Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317, 327. To prevail on a motion for summary judgment, the party moving for summary judgment must be able to point to evidentiary materials that show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Dresher v. Burt (1996),75 Ohio St.3d 280, 293. The non-moving party must then present evidence that some issue of material fact remains for the trial court to resolve.Id.
Where the non-moving party would have the burden of proving a number of elements in order to prevail at trial, the party moving for summary judgment may point to evidence that the non-moving party cannot possibly prevail on an essential element of the claim. See, e.g., Stivison v.Goodyear Tire Rubber Co. (1997), 80 Ohio St.3d 498, 499. The moving party "bears the initial burden of demonstrating that there are no genuine issues of material fact concerning an essential element of the opponent's case." (Emphasis sic.) Dresher, 75 Ohio St.3d at 292. The burden then shifts to the non-moving party to show that there is a genuine issue of material fact as to that element. Id. at 293. "Mere reliance upon the pleadings is insufficient." Carr v. Nemer (Dec. 16, 1992), Summit App. No. 15575, unreported, at 2.
In this case, Haefka filed suit based upon invasion of privacy and the common law tort of outrage. Appellees contend that Haefka's cause of action is based upon intentional infliction of emotional distress. In her appellate brief, Haefka claims that "[h]er cause of action is for common law outrage which has been recognized in Ohio long before the Ohio Supreme Court adopted the Restatement of Torts 2d., Section 46 cause of action for intentional infliction of emotional distress[.]" However, this court notes that Haefka fails to set forth a single legal authority to support her contention. "The intentional tort of infliction of severe emotional distress encompasses the idea of outrageous conduct." Phungv. Waste Management, Inc. (1988), 40 Ohio App.3d 130, 133. In fact, the cause of action for intentional infliction of emotional and mental distress is also sometimes referred to as the common law tort of outrage. See West v. Roadway Express (Apr. 21, 1982), Summit App. No. 10263, unreported, at 27. Therefore, we will address Haefka's cause of action as one based on theories of intentional infliction of emotional distress and invasion of privacy, and we will discuss her arguments accordingly.
 Intentional Infliction of Emotional Distress
To prevail on a claim for the intentional infliction of emotional distress, a plaintiff must prove:
 1) that [defendant] either intended to cause emotional distress or knew or should have known that actions taken would result in serious emotional distress to the plaintiff; 2) that the [defendant's] conduct was so extreme and outrageous as to go "beyond all possible bounds of decency" and was such that it can be considered as "utterly intolerable in a civilized community"; 3) that the [defendant's] actions were the proximate cause of plaintiff's psychic injury; and 4) that the mental anguish suffered by plaintiff is serious and of a nature that "no reasonable man could be expected to endure it."
(Internal citations omitted.) Pyle v. Pyle (1983), 11 Ohio App.3d 31,34. In Yeager v. Local Union 20, the Supreme Court of Ohio emphasized that "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities" are insufficient to give rise to a claim of intentional infliction of emotional distress. Yeager v. Local Union 20
(1983), 6 Ohio St.3d 369, 375. Instead, the defendant's conduct must be
 so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"
Id., quoting Restatement of the Law 2d, Torts (1965) 73, Section 46, comment d.
The plaintiff must also show severe emotional distress. Id. at 374. Severe emotional distress goes beyond trifling mental disturbance, mere upset or hurt feelings. Paugh v. Hanks (1983), 6 Ohio St.3d 72, 78. Severe emotional distress describes emotional injury that is both severe and debilitating, causing a reasonable person, normally constituted, to be unable to cope adequately with the mental distress engendered by the circumstances of the case. Id. at paragraph 3a of the syllabus.
As a preliminary matter, the court must make the threshold "outrageousness" determination as a matter of law and establish "whether there was proof of emotional distress that was more than trifling, mere upset, or hurt feelings." Binns v. Fredendall (1987), 32 Ohio St.3d 244,246. If such proof exists, it is then a question for the trier of fact to determine whether the "emotional distress actually suffered reached the level of serious or debilitating emotional distress." Id.
In support of their motion for summary judgment, Appellees provide answers to interrogatories and a transcript of Haefka's deposition. The interrogatories reflect that the monthly bills were sent for informational purposes only, that Haefka was listed as the primary contact, and therefore she received copies of all correspondence. The answers to interrogatories further state that Haefka "is not personally responsible for the charges to Creola Pitts."
In her deposition, Haefka admitted that Appellees never telephoned Haefka in regards to her paying Pitts' bill. In fact, Haefka testified that she received no correspondence from Appellees other than the monthly billing statements. Haefka further testified that she threw the billing statements away.
Haefka agreed with Appellees that she was never contacted by a bill collector or an attorney concerning nonpayment. She testified that she telephoned Appellees shortly after the first bill arrived in September 1996. She attempted to contact Appellees again in December 1996, but no one was available at that time to speak with her. The only other time Haefka made any attempt to contact Appellees was through a letter by an attorney sent in September 1998.
Haefka also stated that she has worked fulltime since the death of her grandmother. She has remained the sole source of income for her family since November 1995, when her husband began having severe medical problems. She admitted that she missed no work because of the actions of Appellees, nor did she ever seek grief counseling after her grandmother's death. She further admits that she has not sought out the services of a mental health practitioner, but she has continued to see a family physician in connection with general anxiety.
Haefka described the receipt of the monthly statement as being "just like it was a slap in [her] face[.]" However, Appellees submitted Haefka's medical records. These medical records reflect that Haefka made no reference to her physicians concerning Appellees' actions and Haefka's continued receipt of the billing statements.
In order to defeat a properly supported motion for summary judgment on a claim of intentional infliction of emotional distress, a party must present sufficient evidence to create a genuine issue of material fact as to the defendant's behavior and the severity of the injury suffered.McNeil v. Case W. Reserve Univ. (1995), 105 Ohio App.3d 588, 593. Haefka submitted an affidavit in opposition to Appellees' motion for summary judgment. In that affidavit, Haefka states that she was "very fearful, upset and distress[ed] due to the [defendants'] relentless pursuit of me for money I did not owe because of other medical debts my husband and I had." We find that Haefka failed to present sufficient evidence to create a genuine issue of material fact as to the outrageousness of Appellees' conduct and as to the extent of Haefka's emotional distress.
We cannot say that the continual mailing of a billing statement for services rendered to a deceased grandmother constituted extreme and outrageous conduct as required for a claim of intentional infliction of emotional distress. "Only the most extreme wrongs, which do gross violence to the norms of a civilized society, will rise to the level of outrageous conduct." Brown v. Denny (1991), 72 Ohio App.3d 417, 423. Furthermore, we find that Haefka did not suffer severe emotional distress. Here, Haefka's emotional condition does not rise to the level of serious emotional distress as required for a claim of intentional infliction of emotional distress. Consequently, the trial court appropriately granted summary judgment in favor of Appellees on the claim of intentional infliction of emotional distress.
 Invasion of Privacy
The Supreme Court of Ohio first recognized a cause of action for invasion of one's privacy in Housh v. Peth (1956), 165 Ohio St. 35, identifying the following three variations as actionable: (1) the unwarranted appropriation or exploitation of one's personality; (2) the publicizing of one's private affairs with which the public has no legitimate concern; and (3) the wrongful intrusion into one's private activities in such a manner as to outrage or cause mental suffering, shame or humiliation to a person of ordinary sensibilities. Id. at paragraph two of the syllabus. Upon appeal, Haefka argues only intrusion upon seclusion, and we limit our discussion to only this branch of the privacy torts.
In Sustin v. Fee, the Supreme Court of Ohio further explained an actor's liability for the tort of intrusion into seclusion:
 [t]he scope of a person's liability for intrusion into another's seclusion is stated in Section 652B of the Restatement of Torts 2d, as follows: `One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person.'
Sustin v. Fee (1982), 69 Ohio St.2d 143, 145. An actor is subject to liability for intrusion upon seclusion "only when he has intruded into a private place, or has otherwise invaded a private seclusion that the plaintiff has thrown about his person or affairs." York v. GeneralElec., Co. (June 11, 2001), Butler App. No. CA2000-12-241, unreported, quoting Restatement of the Law 2d, Torts (1977), Section 652(B), commentc. Thus, the intrusion tort is "akin to trespass in that it involves intrusion or prying into the plaintiff's private affairs." Killilea v.Sears, Roebuck Co. (1985), 27 Ohio App.3d 163, 166. Examples include watching or photographing a person through the windows of his home or wiretapping his telephone. Id.
A situation of this severity does not exist in this case. Appellees did not intrude upon Haefka's seclusion merely by mailing a billing statement each month. Furthermore, Haefka testified that most months she threw the statement in the trash. It is apparent that sending such billing statements would not result in outrage, mental suffering, shame or humiliation in a person of ordinary sensibilities, and this conduct cannot be said to be highly offensive to a reasonable person. The right of privacy does not extend to one's mailbox. See Shibley v. Time
(1975), 45 Ohio App.2d 69, 72. One court noted that "[t]he mail box * * * is hardly the kind of enclave that requires constitutional defense to protect `the privacies of life.' The short, though regular, journey from mail box to trash can * * * is an acceptable burden at least so far as the Constitution is concerned." Id. at 72-73, quoting Lamont v. Commr.of Motor Vehicles (S.D.N.Y. 1967), 269 F. Supp. 880, 883. The trial court properly granted summary judgment in favor of Appellees on the claim of invasion of privacy.
Haefka's assignment of error is overruled.
 III.
Having overruled Haefka's sole assignment of error, we affirm the decision of the trial court.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellant.
WILLIAM R. BAIRD CARR, J., WHITMORE, J. CONCUR.