Shirley **TERRY**, Individually and on behalf of all others similarly situated, Plaintiffs,

v.

**CALIFORNIA STATE BOARD OF PHARMACY** et al., Defendants,

Ellen Stern **HARRIS** et al., Plaintiffs in Intervention.

No. C–74–1091 RFP (SJ).

United States District Court, N. D. California.

May 12, 1975.

Robert A. Baines, Community Legal Services, San Jose, Cal., for plaintiff Shirley Terry, and others.

Steven M. Fleisher, Charles R. Drew, Health Rights Project, Phillip Neumark, California Rural Legal Assistance, San Francisco, Cal., and Stanton J. Price, National Health Law Program, Los Angeles, Cal., for plaintiffs in intervention.

Louis C. Castro, Deputy Atty. Gen., San Francisco, Cal., for defendants.

Before BROWNING, Circuit Judge, EAST, Senior District Judge, and PECKHAM, District Judge.

## OPINION

PECKHAM, District Judge.

Plaintiffs and plaintiffs in intervention seek declarations of unconstitutionality and permanent injunctions against the enforcement of California Business and Professions Code Sections 651, 651.3 and 652.5 insofar as they prohibit media advertising of the retail price of prescription drugs.

The cause of action arises under 42 U.S.C. Section 1983, with jurisdiction conferred upon this court by 28 U.S.C. Section 1343(3). Since a permanent injunction is sought against the enforcement of these state statutes, a three-judge court has been convened pursuant to 28 U.S.C. Sections 2281 and 2284.

The named plaintiff, Shirley Terry, is a recipient of public assistance whose physician has prescribed certain mainte-

nance drugs which she will be required to take for the rest of her life. She sues individually and on behalf of the class of persons who regularly purchase prescription drugs and wish to receive price information about these drugs from advertising.

Defendants are the California State Board of Pharmacy and the individual members of that board who are responsible for the regulation of the practice of pharmacy in California.

Plaintiffs in intervention are Ellen Stern Harris, the California Newspaper Publishers Association, the California Broadcasters Association, the Los Angeles County Health Rights Organization, the Committee for the Rights of the Disabled, the San Francisco Consumer Action Council, the California Legislative Council for Older Americans, and the Disabled and Blind Action Committee of California.

## I. ABSTENTION

■ Plaintiffs attack the constitutionality of these statutes on several grounds. Before reaching the merits, however, this court must dispose of defendants' suggestion that we abstain from deciding the case until the issues have been presented to the California state courts for resolution. Abstention in this type of case is proper where the state law challenged is uncertain. Harman v. Forssenius, 380 U.S. 528, 534, 85 S.Ct. 1177, 14 L.Ed.2d 50 (1965). If the meaning of the statutes was unclear and the federal constitutional question presented would be materially altered or could be avoided by state court construction of the statutes, abstention might be appropriate. Lake Carriers Association v. MacMullan, 406 U.S. 498, 510, 92 S. Ct. 1749, 32 L.Ed.2d 257 (1972); Harrison v. NAACP, 360 U.S. 167, 79 S.Ct. 1025, 3 L.Ed.2d 1152 (1959).

■ In the present case, the precise scope of the class of persons who are prevented from advertising by the statutes is in dispute. It is clearly the

intention of the statutes, however, to prohibit at least some persons from disseminating retail drug price information. Therefore, the federal constitutional question could only be avoided if the California courts either construed the statutes not to apply to anyone, a view not sustainable by the statutory language, or if they declared the statutes unconstitutional themselves. It is clear that we need not abstain when the only reason to do so would be to permit the California courts to have the first opportunity to assess the constitutionality of these statutes. State judicial remedies need not be exhausted under the federal civil rights acts. Lane v. Wilson, 307 U.S. 268, 59 S.Ct. 872, 83 L.Ed. 1281 (1939); Steffel v. Thompson, 415 U.S. 452, 472–73, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974). The contribution of federal courts to the development of constitutional law would be severely restricted by a doctrine that required deference to the state courts each time a case was presented in which both the state and federal courts had the jurisdiction and duty to examine the constitutionality of state legislation. Abstention is particularly inappropriate when the statutes are challenged on First Amendment grounds. *See* Procunier v. Martinez, 416 U.S. 396, 404, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974); Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965); Zwickler v. Koota, 389 U.S. 241, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967). Accordingly, this court will proceed to the merits.

## II. SECTION 651.3—FIRST AMENDMENT

California Business and Professions Code Section 651.3 provides:

No person, whether or not licensed under this division, shall advertise or cause or permit to be advertised, any representations in any form which in any manner, whether directly or indirectly, refer to the cost, price, charge, or fee to be paid for any commodity or commodities furnished or any serv-

ice or services performed by any person licensed as a physician and surgeon, optometrist, pharmacist, or registered dispensing optician, when those commodities or services are furnished in connection with the professional practice or business for which he is licensed; provided, however, that the provisions of this section do not apply to the furnishing of information regarding benefits available, and charges therefor, under the coverage of any hospital or medical service or insurance plan.

This section shall not be construed to do any of the following:

(a) Modify or establish prices or fees or modify or affect in any manner any other provisions of this division;

(b) Prohibit advertising concerning the allowance of credit, time payments, budget terms, or the allowance of any other method of payment for a commodity or a service where the advertising contains no indication of cost, price, charge, or fee;

(c) Prohibit the advertising of any drug or device which does not require a prescription.[1]

Plaintiffs contend that Section 651.3 violates their First Amendment right as consumers of prescription drugs to receive information concerning the price pharmacies charge for prescription drugs. The parties have stipulated that information as to the price which pharmacies charge for prescription drugs is health essential in that it can allow persons on limited income to purchase necessary prescription drugs at the lowest possible price; that wide disparities in price are found among competing pharmacies; that without information on lowest possible drug price, persons such as plaintiff Terry purchasing the drugs at higher prices will have to sacrifice some other necessities; that to senior citizens, in particular, who have a per capita expenditure for prescription drugs four times greater than that of persons under 65, said information is essential.

This same First Amendment claim was recently upheld in Virginia Citizens Consumer Council v. State Board of Pharmacy, 373 F.Supp. 683 (E.D.Va. 1974) (three-judge court), prob. juris. noted, 420 U.S. 971, 95 S.Ct. 1389, 43 L. Ed.2d 650 (1975). There, a three-judge court permanently enjoined the enforcement of a Virginia statute that labeled as "unprofessional conduct" the advertising or discounting by pharmacies of the prices of retail prescription drugs.

██ The freedoms of speech and the press contained in the First Amendment are fundamental rights which are safeguarded against infringement by the states through the due process clause of the Fourteenth Amendment. DeJonge v. Oregon, 299 U.S. 353, 364, 57 S.Ct. 255, 81 L.Ed. 278 (1937). It is also clear that the First Amendment protects the hearer of the speech and the reader of the article fully as much as it protects the speaker and the author. Kleindienst v. Mandel, 408 U.S. 753, 762–64, 92 S.Ct. 2576, 33 L.Ed.2d 683 (1972); Stanley v. Georgia, 394 U.S. 557, 564, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969).

A. *Inapplicability of Commercial Speech Exception to First Amendment.*

██ The precise information which the plaintiffs claim a right to receive is the price of prescription drugs, the dissemination of which is prohibited by the challenged statutes. Defendants, relying heavily on Valentine v. Chrestensen, 316 U.S. 52, 62 S.Ct. 920, 86 L.Ed. 1262 (1942), contend that the distribution of this information is properly labeled ad-

---

1. California Business and Professions Code § 652.5 makes violation of § 651.3 a misdemeanor.
A misdemeanor is punishable by imprisonment for not more than six months or a fine not to exceed $500 or both. California Penal Code § 19. An agreement or conspiracy to commit a misdemeanor is punishable as a felony. California Penal Code § 182.

vertising which, as commercial speech, should not be entitled to First Amendment protection. It is perhaps appropriate here to state carefully again exactly what is at issue in this case. The plaintiffs seek an injunction against the enforcement of these statutes only insofar as they prohibit price advertising. The plaintiffs are not asserting a right to receive information concerning the quality, effectiveness or capabilities of the drugs, information which tends more directly to promote the product. Thus, the narrow issue before this court is whether low-income consumers of prescription drugs are entitled under the First Amendment to receive information consisting of the retail price at which pharmacies sell prescriptions drugs.

■ It is clear that speech is not rendered commercial and stripped of First Amendment protection by the mere fact that it relates to an advertisement. Pittsburgh Press Co. v. Pittsburgh Commission on Human Relations, 413 U.S. 376, 384, 93 S.Ct. 2553, 37 L.Ed.2d 669, rehearing denied, 414 U.S. 881, 94 S.Ct. 30, 38 L.Ed.2d 128 (1973); New York Times v. Sullivan, 376 U.S. 254, 266, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). But it is equally clear that some commercial speech is subject to a greater degree of regulation than noncommercial speech. Valentine v. Chrestensen, *supra*; Pittsburgh Press, *supra*.

In 1942 in Valentine v. Chrestensen, the Supreme Court sustained a city ordinance which had been interpreted to ban the distribution by handbill of an advertisement soliciting customers to pay admission to tour a submarine. The following language from the short unanimous opinion originated the so-called "commercial speech" doctrine:

This court has unequivocally held that the streets are proper places for the exercise of the freedom of communicating information and disseminating opinion and that, though the states and municipalities may appropriately regulate the privilege in the public interest, they may not unduly burden or proscribe its employment in these public thoroughfares. We are equally clear that the Constitution imposes no such restraint on government as respects purely commercial advertising.[2]

Since 1942, the doctrine has had a somewhat confusing development in the Supreme Court,[3] prompting one of the judges on the unanimous *Chrestensen* court subsequently to urge reconsideration of the distinction between commercial and noncommercial speech, noting that the ruling in *Chrestensen* was "casual, almost offhand . . . [a]nd . . . has not survived reflection."[4]

The most recent Supreme Court opinion discussing the commercial speech doctrine was Pittsburgh Press Co. v. Pittsburgh Commission on Human Relations, *supra,* 413 U.S. 376, 93 S.Ct. 2553, 37 L.Ed.2d 669 (1973). A Pittsburgh city ordinance proscribed an employer from discriminating on the basis of sex in employment advertising and further forbade any person from assisting in such discrimination. The Pittsburgh Human Relations Commission charged the newspaper with a violation of the ordinance in maintaining separate male and female columns in its help-wanted advertising and ordered the newspaper

2. Valentine v. Chrestensen, *supra,* 316 U.S. at 54, 62 S.Ct. at 921.

3. *See, e. g.,* Jones v. Opelika, 316 U.S. 584, 597, 62 S.Ct. 1231, 86 L.Ed. 1691 (1942); Jamison v. Texas, 318 U.S. 413, 417, 63 S.Ct. 669, 87 L.Ed. 869 (1943); Murdock v. Pennsylvania, 319 U.S. 105, 63 S.Ct. 870, 87 L.Ed. 1292 (1943); Breard v. Alexandria, 314 U.S. 622, 71 S.Ct. 920, 95 L.Ed. 1233 (1951); Cammarano v. United States, 358 U.S. 498, 79 S.Ct. 524, 3 L.Ed.2d 462 (1959); New York Times Co. v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964).

4. Cammarano v. United States, 358 U.S. 498, 514, 79 S.Ct. 524, 534, 3 L.Ed.2d 462 (1959) (Douglas, J., concurring).

to cease and desist from segregating the advertisements. The Supreme Court affirmed the Commission order as modified by the Commonwealth Court of Pennsylvania.[5]

While it is undeniable that *Pittsburgh Press* reaffirmed in certain respects the *Chrestensen* doctrine by recognizing the distinctions between commercial and noncommercial speech, *Pittsburgh Press* is distinguishable from the present case and does not compel this court to uphold the challenged statutes.

1. *Reliance on Illegality.* The opinion of the court in *Pittsburgh Press* relies heavily on the fact that the advertising prohibited by the Commission order encouraged an *illegal*[6] activity, employment discrimination. In response to the publisher's invitation to the court to abandon the *Chrestensen* doctrine, the court indicated that it was not necessary in *Pittsburgh Press,* intimating that it might be appropriate in a situation not involving illegal activity.

Pittsburgh Press goes on to argue that if this package of advertisement and placement is commercial speech, then commercial speech should be accorded a higher level of protection than *Chrestensen* and its progeny would suggest. Insisting that the exchange of information is as important in the commercial realm as in any other, the newspaper here would have us abrogate the distinction between commercial and other speech.

Whatever the merits of this contention may be in other contexts, it is un-persuasive in this case. Discrimination in employment is not only commercial activity, it is *illegal* commercial activity under the Ordinance. We have no doubt that a newspaper constitutionally could be forbidden to publish a want ad proposing a sale of narcotics or soliciting prostitutes. Nor would the result be different if the nature of the transaction were indicated by placement under columns captioned "Narcotics for Sale" and "Prostitutes Wanted" rather than stated within the four corners of the advertisement.

The illegality in this case may be less overt, but we see no difference in principle here. Sex discrimination in nonexempt employment has been declared illegal under § 8(a) of the Ordinance, a provision not challenged here. And § 8(e) of the Ordinance forbids any employer, employment agency, or labor union to publish or cause to be published any advertisement "indicating" sex discrimination. This, too, is unchallenged. Moreover, the Commission specifically concluded that it is an unlawful employment practice for an advertiser to cause an employment advertisement to be published in a sex-designated column.

Section 8(j) of the Ordinance, the only provision which Pittsburgh Press was found to have violated and the only provision under attack here, makes it unlawful for "any person . . . to aid . . . in the doing of any act declared to be an un-

---

5. 4 Pa.Cmwlth. 448, 287 A.2d 161 (1972).

6. The result reached in Holiday Magic, Inc. et al. v. Warren et al., 357 F.Supp. 20 (E. D.Wis.1973), may be similarly explained. Plaintiffs challenged an order of the Wisconsin Department of Agriculture which prohibited the promotion of a chain distributor or pyramid scheme. After an informative review of the cases and secondary authority on the commercial speech exception to the First Amendment, 357 F.Supp. at 24–26, the court upheld the order against a First Amendment attack. The analysis relied heavily on the fact that what was pro-hibited was speech intended to solicit the immediate financial participation of persons in these *unlawful* commercial activities. See *Holiday Magic, supra,* 357 F.Supp. at 26.

In Barrick Realty Inc. v. Gary, 491 F.2d 161 (7th Cir. 1974), affirming, 354 F.Supp. 126 (N.D.Ind.1973), a city ordinance forbidding use of for sale signs in residential areas was upheld against a First Amendment attack. The court there also appeared to be particularly responsive to the history, which indicated that the prohibition was intended to slow down the pace of resegregation that had been encouraged by realtors using *unlawful* blockbusting techniques.

lawful employment practice by this ordinance." The Commission and the courts below concluded that the practice of placing want ads for non-exempt employment in sex-designated columns did indeed "aid" employers to indicate illegal sex preferences. The advertisements, as embroidered by their placement, signaled that the advertisers were likely to show an illegal sex preference in their hiring decisions. Any First Amendment interest which might be served by advertising an ordinary commercial proposal and which might arguably outweigh the governmental interest supporting the regulation is altogether absent when the commercial activity itself is illegal and the restriction on advertising is incidental to a valid limitation on economic activity.[7]

The information which plaintiffs seek to receive in this case, the retail price of prescription drugs, does not promote illegal activities. Rather, it is highly significant data that can facilitate the purchase of medically necessary drugs by persons who might not otherwise be able to afford them. Insofar as the result reached in *Pittsburgh Press* depends on the illegality of the interests served by the speech there found not to be entitled to First Amendment protection, the commercial speech doctrine applied in that case is not determinative of the constitutional attack on these statutes.[8]

2. *Product Promotion.* The present dispute is also distinguishable from cases in which merchandisers were seeking First Amendment protection for nothing more than expressions designed to promote the sale of a product. Valentine v. Chrestensen involved handbills distributed by an enterprising promotor to previously uninterested members of the public to induce them to tour his submarine for a fee. The court in *Pittsburgh Press* stated that, "[t]he critical feature of the advertisement in Valentine v. Chrestensen was that, in the Court's view, it did no more than propose a commercial transaction, the sale of admission to a submarine." [9]

It is undisputed that promotional product advertising is less vigorously protected than other forms of speech. Capital Broadcasting Co. v. Mitchell, 333 F.Supp. 582 (D.D.C.1971) (three-judge court), affirmed without opinion, 405 U.S. 1000, 92 S.Ct. 1289, 31 L.Ed.2d 472 (1972); Banzhaf v. FCC, 132 U.S.App.D.C. 14, 405 F.2d 1082 (D.C.Cir. 1968) cert. denied 396 U.S. 842, 90 S.Ct. 50, 24 L.Ed.2d 93 (1969) (recognizing rule). *Banzhaf* upheld the FCC requirement that broadcasters who carry cigarette advertising also provide a significant amount of time for presentation of anticigarette messages, while *Capital Broadcasting* upheld the legislative ban on cigarette advertising in the electronic media. In response to the First Amendment attack, the *Banzhaf* court stated:

> The speech which might conceivably be "chilled" by this ruling barely qualifies as constitutionally protected "speech." It is established that some utterances fall outside the pale of First Amendment concern. Many cases indicate that product advertising is

---

7. *Pittsburgh Press, supra*, 413 U.S. at 388–89, 93 S.Ct. at 2560. (Footnote omitted.)

8. For a similar reason, cases such as American Medicinal Products, Inc., et al. v. Federal Trade Commission, 136 F.2d 426 (9th Cir. 1943) and E. F. Drew & Co. v. Federal Trade Commission, 235 F.2d 735, 740 (2nd Cir. 1956), cert. denied, 352 U.S. 969, 77 S. Ct. 360, 1 L.Ed.2d 323 (1957) do not compel this court to uphold the challenged statutes. *American Medicinal Products* upheld an order of the Federal Trade Commission directing a drug manufacturer to cease and desist

from advertising drugs found by the Commission to be *dangerous* and *fraudulently promoted; E. F. Drew* held that there was no constitutional right to disseminate *false* or *misleading* advertisements. This court does not intend by its decision to cast any doubt on this line of authority, which resisted First Amendment attacks on governmental proscriptions against *fraudulent* advertising.

9. *Pittsburgh Press, supra*, 413 U.S. at 385, 93 S.Ct. at 2558.

at least less rigorously protected than other forms of speech. Promoting the sale of a product is not ordinarily associated with any of the interests the First Amendment seeks to protect. As a rule, it does not affect the political process, does not contribute to the exchange of ideas, does not provide information on matters of public importance, and is not, except perhaps for the ad-men, a form of individual self-expression. It is rather a form of merchandising subject to limitation for public purposes like other business practices.[10]

The instant action seeks access to the retail prices of prescription drugs. While this information is commercial in that it consists of data upon which a consumer may base a decision to purchase, it is not promotional in the same sense as the advertising of cigarettes or submarine tours. Prescription drugs may only be purchased when medically necessary. The consumer does not freely choose to buy the product; he is directed to do so by his physician. The information sought here will make it more likely that plaintiffs will be able to purchase these health essential items. The promotional advertising of cigarettes and submarine tours seeks to generate new demand for goods by consumers who had expressed no previous interest in the products. By touting the virtues of the product, the advertising is intended to create a commercial transaction that would not otherwise occur. Insofar as the information sought here will create commercial transactions that would not otherwise occur, the health needs of the society are served, since a physician has already determined that the prescription drug, the product purchased, is medically necessary to the well-being of the consumer-patient. Further, the advertising sought here is limited to price and does not extend to promotional gimmicks extolling the product and generating artificial demand. While the distinction is admittedly a fine one, this court is of the opinion that since the "critical feature" of the unprotected commercial speech in *Chrestensen* was that it "did no more than propose a commercial transaction," and the information sought here does more, *Chrestensen* and the related opinions in *Banzhaf* and *Capital Broadcasting* do not compel this court to uphold the challenged statutes.

3. *Balancing Approach.* There is also support in the case law for an approach that is not limited to a rigid two-tier typology separating the limited category of unprotected commercial speech from normal constitutionally protected speech. By its reliance on the illegality of the advertisements in sustaining the ordinance in *Pittsburgh Press,* the court invited a balancing of interests approach by implying that even the advertising of an "ordinary commercial proposal" could be accorded protection when the "First Amendment interest which might be served" "might arguably outweigh the governmental interest supporting the regulation." [11]

Rowan v. United States Post Office Department, 300 F.Supp. 1036 (C.D.Cal. 1969) (three-judge court), affirmed, 397 U.S. 728, 90 S.Ct. 1484, 25 L.Ed.2d 736 (1970), rejected a constitutional challenge to a statute permitting addressees to restrict the mailing to them of unsolicited erotic material. Judge Hufstedler, concurring specially in *Rowan,* set out a fluid approach to the analysis of commercial speech issues:

The degree to which the First Amendment applies to protect speech varies with society's interest in the content of that speech. "Purely commercial advertising" has never received the same kind of constitutional protection as that afforded to expressions of greater public concern. The commercial element does not altogether destroy its quality as protected speech,

---

10. Banzhaf v. FCC, *supra,* 405 F.2d at 1101–02. (Footnotes omitted.)

11. *Pittsburgh Press, supra,* 413 U.S. at 389, 93 S.Ct. at 2561.

but it does substantially reduce the weight of the expression on constitutional scales.[12]

After balancing the various interests advanced, with particular emphasis on the "peculiar quality of offensiveness which adheres to solicitations appealing to the erotic interest," [13] Judge Hufstedler concluded that the public interest was sufficient to sustain the statute against First Amendment attack.

In another case utilizing the balancing approach to commercial speech questions, Unemployed Workers Union v. Hackett, 332 F.Supp. 1372, 1376 (D.R.I. 1971) (Pettine, C. J.), the court concluded after weighing the various interests that it was a "thoughtless perversion" to suggest that a handbill informing unemployed persons about food stamp and welfare benefits, as well as about unemployment compensation, was unprotected as commercial speech simply because it was designed to assist the plaintiff Unemployed Workers Union in organizing others for its cause.

In weighing the importance of the speech being expressed against the interests advanced by the state in the present case, we begin by observing that the information sought by the plaintiffs, simply the price charged for a given quantity of a given prescription drug, has been stipulated to be health-essential, and may in some cases even be life-essential, insofar as it may increase availability to low-income persons of medically necessary prescription drugs. Plaintiffs do not desire to receive advertising about the quality, desirability or effectiveness of the product, but merely price information on prescription drugs, items which are subject to extremely stringent sale and distribution controls. Plaintiff consumers have indicated a desire to receive this information, which is vital to their health and welfare. Valentine v. Chrestensen, *supra*, involved non-vital, purely commercial, promotional literature regarding the amusement of a submarine tour, information which the recipients of the handbills never indicated a wish to receive. *Pittsburgh Press, supra*, involved speech which was not simply informative, but which was found by the Pittsburgh Commission on Human Relations to assist unlawful sex-based employment discrimination. The interests of the parties seeking First Amendment protection in this case are substantially more compelling than in *Chrestensen* and *Pittsburgh Press*, and the interests advanced by the state are less compelling, as discussed *infra*.

In the course of distinguishing *Chrestensen*, the three-judge court stated in the *Virginia Citizens Consumer Council* case:

Instantly, the actual suitors are consumers; their concern is fundamentally deeper than a trade consideration. While it touches commerce closely, the overriding worry is the hindrance to a means for preserving health or even saving life.[14]

It has already been established that the mere fact that speech touches commerce does not necessarily deprive it of constitutional protection. In determining the extent to which the advertisements plaintiffs seek to receive are commercial or informational, the following language of the Supreme Court gives us direction.

Freedom of discussion, if it would fulfill its historic function in this nation, must embrace all issues about which information is needed or appropriate to enable the members of society to cope with the exigencies of their period.

Thornhill v. Alabama, 310 U.S. 88, 102, 60 S.Ct. 736, 744, 84 L.Ed. 1093 (1940).

In light of the vital importance of the speech here proscribed, this court is of the opinion that the information which plaintiffs claim a right to receive, the

12. *Rowan, supra*, 300 F.Supp. at 1044 (Hufstedler, J., concurring specially).

13. *Id.*

14. Virginia Citizens Consumer Council, *supra*, 373 F.Supp. at 686.

retail price of prescription drugs, is entitled to the protection of the First Amendment.[15]

B. *Insufficiency of Available Alternative Means of Access.*

██ This preliminary holding, however, is by no means alone dispositive of the constitutionality of the challenged statutes. Defendants contend that plaintiffs' First Amendment right-to-know argument is undercut by the presence of alternative means of obtaining the price information, pursuant to California Business and Professions Code Section 4333, which requires pharmacists to post inside their stores the prices of the 100 most frequently used drugs and answer oral and written inquiries about prices.

The availability of other alternatives certainly does not extinguish the constitutional interest of plaintiffs in the particular form of access sought. Kleindienst v. Mandel, 408 U.S. 753, 765, 82 S.Ct. 2576, 33 L.Ed.2d 683 (1972). In other contexts, the court has indicated that the availability of alternative forums for the expression and presumably the receipt of information is wholly irrelevant to a constitutional demand for another reasonable method. Schneider v. Irvington, 308 U.S. 147, 163, 60 S.Ct. 146, 84 L.Ed. 155 (1939). In some cases, most notably those involving penal incarceration, the court has permitted the withdrawal or limitation of certain constitutional rights and privileges as concomitants to the loss of liberty. *See, e. g.*, Pell v. Procunier, 417 U.S. 817, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974). But even in *Pell* the court reaffirmed the general rule in nonunique contexts that alternative sources of information do not foreclose First Amendment inquiry.

We would find the availability of such alternatives unimpressive if they were submitted as justification for governmental restriction of personal communication among members of the general public.[16]

Many of the plaintiffs, users of prescription drugs, are old and infirm, unable to travel to and view posted price posters at a number of pharmacies sufficiently large to provide them with an accurate sample of prices. Evidence in this case indicates that telephone contact is also very time-consuming and costly and not a feasible means of making price information available to an individual consumer. This court finds that by prohibiting media advertising, the most effective means of providing price information to consumers, the challenged statutory scheme significantly and impermissibly restricts the distribution of the information plaintiffs seek, thereby establishing a prima facie violation of the First Amendment.

C. *State Interests.*

██ In defense of this restriction on plaintiffs' access to information, the Board of Pharmacy contends that the statute serves a number of legitimate state interests. Before examining these interests, a framework for analysis must be established. In order to withstand attack grounded in the First Amendment, one of our preferred freedoms,[17] the state interests served by the statute must be compelling. Branzburg v.

15. Two California Courts of Appeal have held that the First Amendment protects the right to disseminate information to the public concerning legal drugs and treatment regimens. People v. Orser, 31 Cal.App.3d 528, 107 Cal.Rptr. 458 (1st Dist. 1973) (information and counseling about legal therapeutic abortions) ; In re Schillaci, 196 Cal.App.2d 591, 16 Cal.Rptr. 757 (2nd Dist. 1961) (information concerning remedies for certain sexual inadequacies and disorders). While these cases are, of course, not binding upon this court, the discussion of the importance of the health-related information the public there sought to receive and the analysis of the First Amendment issue are consistent with and provide persuasive support for the conclusion reached in the present case.

16. *Pell, supra*, 417 U.S. at 825, 94 S.Ct. at 2805.

17. United States v. Carolene Products, 304 U.S. 144, 152 n. 4, 58 S.Ct. 778, 82 L.Ed. 1234 (1938).

Hayes, 408 U.S. 665, 680, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972). In addition, even if the statute is shown to serve compelling governmental interests, to be upheld there must be no means of advancing those interests available to the state which are less burdensome to the freedoms impinged upon by the legislation. Dunn v. Blumstein, 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972); Shelton v. Tucker, 364 U.S. 479, 488, 81 S.Ct. 247, 5 L.Ed.2d 231 (1960).

Essentially four reasons are urged by defendants as compelling support for the maintenance of California's current prohibition on price advertising: (1) price advertising would generate artificial demand for prescription drugs; (2) price advertising would be misleading to consumers; (3) price advertising would make certain information available to potential forgers of prescriptions; and (4) price advertising would tend to lower the standards of the profession of pharmacy. Plaintiffs have responded directly to each of the state claims.

Initially, defendants argue that California has a compelling interest in seeing that price information on drugs is provided to the public in a manner which will not serve to create artificial demands for prescription drugs. Consumers do not, however, determine the demand for prescription drugs as they do for over-the-counter drugs. The consumer performs only one function in the process, that of purchasing the product selected for him by his physician and sold to him by his pharmacist. Only properly licensed health practitioners may issue a prescription; dangerous drugs may only be dispensed by prescription; the sale of dangerous drugs without a prescription is prohibited by law; the pharmacist who violates the law can lose his license to practice; and the physician who engages in improper prescribing practices can be subjected to disciplinary action by the Board of Med-

ical Examiners. In Pennsylvania State Board of Pharmacy v. Pastor, 441 Pa. 186, 272 A.2d 487 (1971), the Supreme Court of Pennsylvania stated:

> "[T]o urge that allowing price advertisements of prescription drugs would increase the use of such drugs, one must assume either (a) that patients are able to pressure doctors into prescribing drugs for them, or (b) that pharmacists are willing to risk selling such drugs without a prescription.[18]

In the course of declaring unconstitutional a pharmacy board rule prohibiting price advertising of prescription drugs, the Supreme Court of Florida stated in Stadnick v. Shell's City, Inc., Fla., 140 So.2d 871 (1962):

> The rule proceeds on the notion that the advertisement of a prescription drug will subject the physicians to some sort of irresistible pressures that will force them to prescribe drugs for their patients simply on the basis of patient demand and without regard to the physical well-being of the patient. This concept disregards completely the professional and ethical integrity of the medical profession in prescribing remedies for patients. Furthermore, it actually suggests the probability of unethical conduct.[19]

This court simply will not make those assumptions about the practices of pharmacists and physicians.

It is clear that advertising limited to price, like the simple and clear posting of prices required by Section 4333 of the California Business and Professions Code, need not be deceptive. Furthermore, false advertising is already proscribed by state law.

The interest of the state in preventing forgery of prescriptions is substantial, perhaps even compelling, but the statutory scheme presently challenged is a very indirect method of combating the problem.

---

18. Pennsylvania State Board of Pharmacy v. Pastor, *supra,* 272 A.2d at 492.

19. Stadnick v. Shell's City, Inc., *supra,* 140 So.2d at 875.

Price advertising need not reduce the professional standards of pharmacists. With prescription drug price advertising permitted, pharmacists will be as free as they are now to advise purchasers on the proper use of drugs which doctors prescribe and to monitor the interaction of the various drugs a person may be ingesting on the prescription of more than one physician. The ruling of this court will not compel any pharmacist to lower the level of his professional practice.

It is clear that the state has legitimate interests in controlling artificial demand for prescription drugs, preventing misleading advertising, maintaining professional standards and preventing forgery of prescriptions. Even assuming that this court found them to be compelling, the statute challenged could not stand because the statute only minimally advances the interests asserted, and in any event does not do so by the means least restrictive of the plaintiffs' burdened First Amendment freedoms. Each asserted state interest can be more directly protected without restricting access to information on prescription drug prices. If present enforcement practices are inadequate, stiffer penalties and more vigorous enforcement of existing law will insure that physicians or pharmacists will not succumb to patient pressure to prescribe or dispense unnecessary medication. The maintenance of professional standards can more effectively be accomplished by direct supervision and monitoring of the services pharmacists provide to their patients. Forgery and deceptive advertising can, of course, be fought by the vigorous enforcement of already existing prohibitory legislation.

Accordingly, this court holds that to the extent the challenged statutory scheme prohibits advertising limited to the price charged for prescription drugs, it violates the First Amendment rights of the plaintiffs.

## III. SECTION 651.3—DUE PROCESS —VAGUENESS

Plaintiffs also challenge Section 651.3 on due process grounds, contending that the statute is unconstitutionally vague in two respects: first, that it is unclear what types of information-distribution are prohibited by the proscription against "advertising" and second, that it is unclear what persons are prevented from "advertising" by the statutes.

Defendants initially contended that Section 651.3 prohibited the publishing by "any person" of "any representations in any form which in any manner, whether directly or indirectly, refer to cost, price, charge, or fee," that is, it prevented anyone, including the plaintiff consumer groups, from advertising in any manner other than the posting of prices provided for in California Business and Professions Code Section 4333.[20] Later, defendants retreated to a more limited position, contending that Section 651.3 only prohibits promotional, not informational, advertising, so that, for example, plaintiff San Francisco Consumer Action would not be prevented from publishing noncommercial, informative pamphlets.[21]

The defendants' position is, perhaps, most easily understood by examining four conceivable proscriptions against drug price advertising, depending on two variables: first, the nature of the advertising (informational or promo-

---

**20.** *See* defendants' opening memorandum of points and authorities in support of motion to dismiss or in the alternative motion for summary judgment and opposition to injunctive relief, Docket No. 20, filed December 12, 1974, at 21–24.

**21.** *See* defendants' response to motion for summary judgment of plaintiffs and plain-

tiffs in intervention, Docket No. 23, filed December 27, 1974, at 2–4, and the affidavit of James R. Gates, defendants' Exhibit H, which states that the defendant California State Board of Pharmacy only seeks to enforce the statute against individuals who seek to promote the sale of prescription drugs by advertising.

tional), and second, the person doing the advertising (licensed pharmacist or other person). Defendants' initial position was that the statute had the broadest possible scope, covering all four possibilities, preventing all advertising, informational as well as promotional, by any persons. The position defendants later adopted would clearly permit *informational* advertising by *nonlicentiates*, and would just as clearly prohibit *promotional* advertising by *licensed* pharmacists, but is unclear about the other two possibilities: *informational* advertising by *licensed* pharmacists or *promotional* advertising by *nonlicentiates*.

 It is well settled that criminal statutes in the First Amendment area are limited to a very narrow range of permissible vagueness. Smith v. California, 361 U.S. 147, 151, 80 S.Ct. 215, 4 L.Ed.2d 205 (1959); Winters v. New York, 333 U.S. 507, 509, 68 S.Ct. 665, 92 L.Ed. 840 (1948); Herndon v. Lowry, 301 U.S. 242, 258, 57 S.Ct. 732, 81 L.Ed. 1066 (1937); Stromberg v. California, 283 U.S. 359, 369–70, 51 S.Ct. 532, 75 L.Ed. 1117 (1931). The statutory language in combination with the defendants' inconsistent attempts to elucidate the scope of the statute render this legislation unconstitutionally vague.

 Defendants' final reading of the statute to permit informational price advertising by groups such as plaintiff San Francisco Consumer Action is grammatically tortured [22] and simply not sustainable by the statutory language.[23] Additionally, it is difficult to imagine exactly how the distinction between promotional and informational advertising would be defined for purposes of the concession.

Furthermore, given the radical turnabout of defendants during the course of this litigation, it is unreasonable to expect plaintiffs to rely at their peril on the most recently enunciated position of the board. Future members might not consider themselves bound by the present members' concessions and might apply the statute against plaintiffs in accord with the plain language of the statute. Defendants' dramatic change of position is itself evidence of the vagueness of the statute. If even the persons charged with enforcement of the statute cannot tell for sure to whom the prohibitions apply and what conduct is proscribed, the statute is certainly one which, "forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application.[24]

Accordingly, this court holds that Section 651.3 is unconstitutionally vague in violation of the due process clause of the Fourteenth Amendment.

Defendants contend that this case is controlled by Head v. New Mexico Board

22. The defendants' conclusion, that the statute only prohibits "promotional" or "commercial" advertising in connection with the profession of pharmacy, requires that the prepositional phrase, "when those commodities or services are furnished in connection with the professional practice or business for which he is licensed," be read to modify the words "advertise" or "representations," rather than the words "commodities" or "services," the nouns immediately preceding the phrase which are directly referred to within the phrase itself as the antecedent subjects. The structure of the sentence indicates that the prohibition extends to "representations in any form" so long as they refer to the price of the commodity (here prescription drugs), when that *commodity* is "furnished in connection with the professional practice" of the licensed pharmacist. The grammatical structure will not support defendants' limitation of the prohibition to "promotional advertising."

23. The defendants' attempt to moot the case by applying the statute not to apply to publications by plaintiffs such as San Francisco Consumer Action is not sustainable by the statutory language, which reads that "[n]o person, whether or not licensed . . ., shall advertise or cause or permit to be advertised, any representations. . . ." The language clearly was intended by the legislature to prevent advertising by *any persons*.

24. Connally v. General Construction Co., 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926).

of Examiners, 374 U.S. 424, 83 S.Ct. 1759, 10 L.Ed.2d 983 (1963),[25] Semler v. Oregon State Board of Dental Examiners, 294 U.S. 608, 55 S.Ct. 570, 79 L.Ed. 1086 (1935), and Williamson v. Lee Optical Co., 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563 (1955). These cases upheld certain state regulations of the advertising of professional services. They are distinguishable from the present case in which the California statutes prohibit the advertisement of the price of a commodity, a specific item prescribed and identified by a physician. The pharmacist does nothing more than provide exactly what the doctor ordered. While the pharmacist's function is very important and attendant with great responsibility and risk, it is more akin to the provision of a product than the rendering of a service, which is commonly thought of as involving greater flexibility and discretion on the part of the provider. Accordingly, the Supreme Court cases cited, *supra*, do not dissuade this court from its conclusion on the First Amendment and Due Process issues. See Virginia Citizens Consumer Council v. State Board of Pharmacy, *supra*, 373 F.Supp. at 686.

## IV. SECTION 651—FIRST AMENDMENT

Plaintiffs also challenge Section 651 of the Business and Professions Code as unconstitutional in two respects: first, that it violates plaintiffs' First Amendment rights by totally preventing them from knowing that a pharmacy offers drugs at a discount and second, that it is unconstitutionally vague in that it proscribes the selling of drugs at a "discount," a term alleged to be so vague as to deny due process.

Section 651 reads:

It is unlawful for any person licensed (a) under this division, except a person licensed under Chapter 7.5 (commencing with Section 3300); or (b) under any initiative act referred to in this division to offer for sale or to sell any commodity or to offer to render or to render any service under the representation that the price or fee which is to be, or is, charged for such commodity or service, or both, is at a discount, or under the representation that the price or fee which is to be, or is, charged for such commodity or service, or both, is at a percentage or otherwise less than the average fee or price then regularly charged under like conditions by the person so licensed or by other persons for such commodity or service or commodity and service. The provisions of this section shall not be construed to modify or establish prices or fees or to modify or affect in any manner any other provision of this division. Any person licensed under Chapter 7.5 (commencing with Section 3300) of this division who offers for sale or sells any commodity or offers to render or renders any service under the representation that the price or fee for such commodity or service is at a discount or at a percentage or otherwise less than the average price or fee then regularly charged under like conditions by the person so licensed or by other persons shall include in such representation a statement of the average price or fee then regularly charged by the person so licensed or by other persons.

The provisions of this section pertaining to persons licensed under Chapter 7.5 (commencing with Section 3300) of this division shall not apply to the sale of any ophthalmic materials.[26]

Section 651 has been held not to prohibit the actual giving of discounts, but

---

25. The First Amendment issue was not even considered by the court in *Head, supra,* since it was not made to the state courts or reserved in the notice of appeal to the Supreme Court. 374 U.S. at 432, n. 12, 83 S. Ct. 1759.

26. California Business and Professions Code § 652.5 makes violation of § 651 a misdemeanor. See note 1, *supra*.

only to prohibit the representation that the price is a discount one. Cozad v. Board of Chiropractic Examiners, 153 Cal.App.2d 249, 259, 314 P.2d 500, 506 (2nd Dist.1957).

▪▪▪ This court is of the opinion that Section 651 violates plaintiffs' First Amendment rights for essentially the same reasons that invalidated Section 651.3. The receipt of information that a pharmacy offers prescription drugs at a discount price to certain classes of consumers could enable certain of the low-income plaintiffs to purchase drugs at that particular pharmacy in circumstances where they could not afford, and would not be able to purchase, the same drug at a pharmacy not offering the lower price. While the statute as construed by the California courts would apparently permit pharmacists actually to sell drugs at a discount to senior citizens, the chronically ill, or some other class of high volume users, it does not permit pharmacists to represent to anyone that the price is at a discount. Since no one would purchase without knowledge of the discount, the practical effect of banning representation of a discount is the same as banning the discount itself. Given the importance to plaintiffs of the information suppressed by Section 651, the statute must fall as violative of the First Amendment.

## V. SECTION 651—DUE PROCESS—VAGUENESS

While this court would be inclined to find Section 651 also violative of due process in that the term "discount" is impermissibly vague, the present plaintiffs do not appear to have standing to assert this constitutional violation. Unlike Section 651.3, which prohibits violations by any person, Section 651 applies only to licensees in the healing arts. None of the named plaintiffs or plaintiffs in intervention purport to be a licensee subject to prosecution under the allegedly vague statute. In Patterson Drug Company v. Kingery, 305 F.Supp. 821 (W.D.Va.1969) (three-judge court), where a Virginia statute almost identical to Section 651 was found to be unconstitutionally vague, the plaintiffs were a drug company and a pharmacist in charge of one of the branch drug stores. Defendants argue that plaintiffs lack standing to object to the vagueness of the statute, because, unlike the plaintiffs in *Patterson Drug*, they are not subject to prosecution for violation of the statute. Since we have already found the statute violative of the First Amendment, we need not and do not express any opinion on the standing issue, and do not reach the merits of the vagueness attack on Section 651.

## VI. ANTITRUST

Plaintiffs also argue that the statutes maintain and perpetuate an anticompetitive market for prescription drugs in California in violation of the federal antitrust laws and the supremacy and commerce clauses of the United States Constitution. This argument raises troublesome issues concerning possible state exemptions from federal antitrust prohibitions. *See, e. g.*, State of New Mexico v. American Petrofina, Inc. et al., 501 F.2d 363 (9th Cir. 1974), noted, 88 Harv.L. Rev. 1021 (1975). In light of this court's disposition of the First Amendment and Due Process attacks, we need not reach the antitrust issue.

## CONCLUSION

We conclude that the plaintiffs and intervenors are entitled to declaratory and injunctive relief permanently enjoining defendant Board from enforcing California Business and Professions Code Sections 651, 651.3 and 652.5 insofar as they prohibit advertising of the retail price of prescription drugs or advertising of the fact that a quoted price is at a discount.