ANDERSON, CLAYTON & CO., a Delaware Corporation et al.,
Plaintiffs,

v.

WASHINGTON STATE DEPARTMENT OF AGRICULTURE and Stewart Bledsoe, the Washington State Director of Agriculture, Defendants.

No. C74–167T.

United States District Court,
W. D. Washington,
Tacoma Division.

Oct. 29, 1975.

Arnall, Golden & Gregory, Atlanta, Ga., Davis, Wright, Todd, Riese & Jones, Seattle, Wash., for plaintiffs.

Slade Gorton, Atty. Gen., E. E. "Bill" Rosatto, Senior Asst. Atty. Gen., Olympia, Wash., for defendants.

Before KILKENNY, Senior Circuit Judge, EAST, Senior District Judge, and GOODWIN, District Judge.*

## OPINION

EAST, Senior District Judge:

### THE CAUSE

PARTIES:

The above-named corporate plaintiffs (hereinafter collectively and severally referred to as Plaintiffs) are independent competitive manufacturers and national marketeers of five nationally known brands of margarine.

The Washington State Department of Agriculture is an agency of the State of Washington and the individually named defendant, and any successor in office, is the executive officer charged with the direction of the agency's enforcement of the agriculture laws of the state and particularly the hereinafter specified legislative Act. The agency and its executive officer are hereinafter collectively and individually referred to as Defendants.

CHALLENGED STATUTE:

A statute of the State of Washington, RCW 15.40.030, provides:

"*Advertising of oleomargarine—Dairy terms prohibited.* It shall be unlawful in connection with the labeling, selling, or advertising of oleomargarine to use dairy terms, or words or designs commonly associated with dairying or dairy products, except to the extent that such words or terms are necessary to meet legal requirements for labeling . . .."

Other sections provide for the ex parte seizure of a violator's product within the state and its condemnation (15.40.040) and criminal penalties (15.40.050) for violation of RCW 15.40.030.

FACTS:

The Plaintiffs' national electronic and printed news media program of advertising their respective margarine products has been geared to the regulatory provisions of the federal 1950 Oleomargarine Act as administrated by the Federal Trade Commission and those advertisements carry comparative references of their margarine product to dairy products, such as cream and butter.

The Defendants have in the past and now threaten the Plaintifffs in writing to strictly and literally enforce RCW 15.40.030 and its sanctions against the Plaintiffs if they publish proposed advertisements of margarine products which therein contain comparative references of their respective products to dairy terms and specifically to "butter." In deference to and under the force of the Defendants' threats of prosecution, the Plaintiffs have not published any advertisements containing such references to butter which they otherwise would have done.

In order to comply with RCW 15.40.-030 and the threatened enforcement thereof by the Defendants, the Plaintiffs have been forced to "cut in" or "trim out" of their national news media advertisement beamed for or published in the State of Washington the comparative references to dairy products and

* Honorable John F. Kilkenny, Senior United States Circuit Judge for the Ninth Circuit, William G. East, Senior United States District Judge for the District of Oregon, and William N. Goodwin, United States District Judge for the Eastern District of Washington, constituting a statutory three-judge district court by designation of Chief Judge Richard H. Chambers for the Ninth Circuit, dated October 31, 1974.

particularly butter at an expense and cost in excess of $200,000.[1]

## PLAINTIFFS' CONTENTION:

The Plaintiffs assert that RCW 15.-40.030, together with its sanctions, is per se unconstitutional in that its provisions violate:

(a) The Supremacy Clause (Article VI) of the United States Constitution in that it is in conflict with the Acts of Congress, namely, the 1950 Oleomargarine Act, the Federal Communications Act, and the Federal Trade Commission Act;

(b) The Commerce Clause (Article I, § 8) of the United States Constitution;

(c) The Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution; and

(d) The Privilege and Immunities Clause of the First Amendment to the United States Constitution in that the state law prevents and restricts the free dissemination of information and abridges not only the Plaintiffs' freedom of speech and of the press but also the consuming public's right to know the comparative qualities of Plaintiffs' products and butter.

## RELIEF SOUGHT:

The Plaintiffs seek a declaratory judgment that RCW 15.40.030, together with its sanctions, is per se unconstitutional and unenforceable, and further, if necessary, for permanent injunctive relief of enforcement of the declaratory judgment.

1. The court heard a recordation of the outlandish effect of such "cut in" or "trim out" process.

2. The foregoing ruling upon the individual standing of the Plaintiffs is no indication by us that the Plaintiffs held representative standing to represent any member of the

## MOTIONS OF THE PARTIES:

The motion of the Defendants for dismissal of the complaint and cause and the motion of the Plaintiffs for judgment on the pleadings came on for hearing. Following the hearing, all counsel for the parties agreed, with the approval of this court, that the cause should be deemed submitted for determination upon the merits. Thereafter and based upon subsequent decisions of the Supreme Court of the United States, the cause was withdrawn from submission with leave to the parties to further brief their respective contentions in view of those decisions. That briefing have been completed, the cause is deemed submitted for final disposition on the merits.

## DISCUSSION AND CONCLUSIONS

■ At the outset, we find from the records and files herein and particularly from the oral statements of counsel that the Defendants' threats of prosecution against the Plaintiffs directly caused the withholding by the Plaintiffs of their respective advertisements of their products containing comparative references to the dairy term "butter," and conclude that such state action was tantamount to an official suppression of the Plaintiffs' publications resulting in injury with no opportunity to obtain a judicial test of the constitutional issues. Accordingly we hold that the Plaintiffs each have clear standing to prosecute these proceedings. *Bigelow v. Virginia,* 421 U.S. 809, p. 816–17, 95 S.Ct. 2222, 44 L.Ed.2d 600 (1975) [hereinafter cited as *Bigelow*], and *BBS Productions, Inc. v. Purcell,* 360 F.Supp. 801, at 804–05 (D. Ariz.1973).[2]

public. The issue of whether the Plaintiffs hold standing in a representative capacity to assert on behalf of any member of the public a claimed right to know is specifically reserved. *Cf. Construction Industry Association of Sonoma County v. Petaluma,* 522 F. 2d 897, at 903–905 (9th Cir. 1975).

■ For the reasons hereinafter delineated, we conclude and hold that RCW 15.40.030, together with its provisions for sanctions, is per se violative of the Plaintiffs' First Amendment fundamental immunities and privileges in that their individual right of freedom of speech and the press is unnecessarily restricted and encroached upon.

The Defendants rely upon the thesis that there is absolutely no First Amendment protection of commercial or promotional speech and that *Valentine v. Chrestensen,* 316 U.S. 52, 62 S.Ct. 920, 86 L.Ed. 1262 (1942) [hereinafter cited as *Chrestensen*] stands for this rule. Such reliance is misplaced at this late date. The antiquated, casually adopted rationale of *Chrestensen* has been questioned for nearly 20 years. Concurring in *Cammarano v. United States,* 358 U.S. 498, 79 S.Ct. 524, 3 L.Ed.2d 462 (1958), Justice Douglas wrote:

> "*Chrestensen* . . . held that business advertisements and commercial matters did not enjoy the protection of the First Amendment . . . was casual, almost offhand. And it has not survived reflection. . . . Individual or group protests against action which results in monetary injuries are certainly not beyond the reach of the First Amendment . . . ." 358 U.S. at 513–14, 79 S. Ct. at 533.

In *Pittsburgh Press Co. v. Pittsburgh Commission on Human Relations,* 413 U.S. 376, 93 S.Ct. 2553, 37 L.Ed.2d 669 (1973), the court decided that the First Amendment was not offended by a statute prohibiting advertisement of employment under sex-classified column headings. Nevertheless the court avoided reiteration of an absolute rule that commercial advertising language is not protected by the First Amendment. There the court simply concluded that:

> "Any First Amendment interest which might be served by advertising an or-

dinary commercial proposal and which might arguably outweigh the governmental interest supporting the regulation is altogether absent when the commercial activity itself is illegal and the restriction on advertising is incidental to a valid limitation on economic activity." 413 U.S. at 389, 93 S.Ct. at 2561.

Informative is Mr. Justice Brennan's dissent in *Lehman v. City of Shaker Heights,* 418 U.S. 298, 314, n. 6, 94 S.Ct. 2714, 41 L.Ed.2d 770 (1974).

Lately, the *Chrestensen* rationale was sent to oblivion in *Bigelow.*[3] Therein the majority at pp. 818–820 of 421 U. S., at p. 2231 of 95 S.Ct., say of the *Chrestensen* rationale of non-First Amendment protection "to paid commercial advertisements" that:

> "Our cases, however, clearly establish that speech is not stripped of First Amendment protection merely because it appears in that form. *Pittsburgh Press [supra]* . . .; *New York Times Co. v. Sullivan,* 376 U.S. 254, 266 [84 S.Ct. 710, 718, 11 L.Ed.2d 686] (1964).

> "The fact that the particular advertisement in appellant's newspaper had commercial aspects or reflected the advertiser's commercial interests did not negate all First Amendment guarantees. The State was not free of constitutional restraint merely because the advertisement involved sales or 'solicitations,' *Murdock v. Pennsylvania,* 319 U.S. 105, 110–111 [63 S.Ct. 870, 873–874, 87 L.Ed. 1292] (1943) . . . or because appellant's motive or the motive of the advertiser may have involved financial gain, *Thomas v. Collins,* 323 U.S. 516, 531 [65 S.Ct. 315, 323, 89 L.Ed. 430] (1945). The existence of 'commercial activity, in itself, is not justification for narrowing the protection of expression secured by the First Amend-

---

3. True enough, *Bigelow* involved commercial advertising of an abortion referral service, while the issue before us is commercial ad- vertising of margarine. Both involve commercial advertising and we see no significant distinction between the two.

ment.' *Ginzburg v. United States*, 383 U.S. 463, 474 [86 S.Ct. 942, 949, 16 L.Ed.2d 31] (1966).

. . . . .

"The fact that [*Chrestensen*] had the effect of banning a particular handbill does not mean that *Chrestensen* is authority for the proposition that all statutes regulating commercial advertising are immune from constitutional challenge. The case obviously does not support any sweeping proposition that advertising is unprotected *per se*."

Finally, the majority completely sweeps away and eradicates the *Chrestensen* rationale via the statement at p. 826, 95 S.Ct. at p. 2235:

"The relationship of speech to the marketplace of products or of services does not make it valueless in the marketplace of ideas.

"The Court has stated that 'a State cannot foreclose the exercise of constitutional rights by mere labels.' *NAACP v. Button*, 371 U.S. [415], at 429 [83 S.Ct. 328, at 336, 9 L.Ed.2d 405]. Regardless of the particular label asserted by the State—whether it calls speech 'commercial' or 'commercial advertising' or 'solicitation'—a court may not escape the task of assessing the First Amendment interest at stake and weighing it against the public interest allegedly served by the regulation."

*See also* the three-judge court decision in *Terry v. California State Board of Pharmacy*, 395 F.Supp. 94 (N.D.Cal. 1975), citing the three-judge District Court decision in *Virginia Citizens Consumer Council, Inc. v. State Board of Pharmacy*, 373 F.Supp. 683 (E.D.Va. 1974), *prob. juris. noted,* 420 U.S. 971, 95 S.Ct. 1389, 43 L.Ed.2d 650 (1975) and the three-judge District Court decision in *Population Services International v. Wilson*, 398 F.Supp. 321 (S.D.N.Y. 1975).

■ We equate the Plaintiffs' First Amendment immunities and privileges and the public's interest in public dissemination of true and honest advertising of factual information regarding food products evenly with that in the ultimate acquisition of prescription drugs,[4] abortion,[5] and contraceptives.[6]

In turn, the Defendants contend that the compelling state interest sought to be protected through the enforcement of RCW 15.40.030 is protection of the public from confusion, fraud and deception in the marketing of margarine.

■ Assuming, *arguendo,* that Plaintiffs' advertisements do carry confusing and deceptive comparative references to the dairy product butter and their margarine products, as the Defendants would have us believe, and the express purpose and force of RCW 15.40.030 is in the pursuit of a legitimate state interest of the state,[7] nevertheless substantial state law restrictions upon the free exercise of per se or fundamental constitutional rights, such as First Amendment immunities and privileges, are unconstitutional unless the State can demonstrate that such laws are necessary to promote a compelling governmental interest. *Dunn v. Blumstein*, 405 U.S. 330, 342, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972); *Kramer v. Union Free School District*, 395 U.S. 621, 627, 89 S. Ct. 1886, 23 L.Ed.2d 583 (1969), and *Shapiro v. Thompson*, 394 U.S. 618, 634, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969).

Furthermore:

"[E]ven when pursuing a legitimate interest, a State may not choose means that unnecessarily restrict constitutionally protected liberty. *Dunn* . . . [405 U.S.] at [342,] 343 [92 S.Ct. 995, at 1003, 31 L.Ed.2d 274]. ["Statutes affecting constitutional rights must be drawn with 'precision,' *NAACP v. Button*, 371 U.S. 415, 438 [83 S.Ct. 328, 9 L.Ed.2d 405] (1963); *United States v. Robel*, 389 U.S. 258,

---

4. *Terry, supra.*

5. *Bigelow.*

6. *Population Services, supra.*

7. A premise upon which we express no opinion.

265 [88 S.Ct. 419, 19 L.Ed.2d 508] (1967), and must be 'tailored' to serve their legitimate objectives. *Shapiro v. Thompson, supra,* [394 U.S.] at 631 [89 S.Ct. 132]"] . . . If the State has open to it a less drastic way of satisfying its legitimate interests, it may not choose a legislative scheme that broadly stifles the exercise of fundamental personal liberties. *Shelton v. Tucker,* 364 U.S. 479, 488 [81 S. Ct. 247, 252, 5 L.Ed.2d 231]." *Kusper v. Pontikes,* 414 U.S. 51, 58–59, 94 S. Ct. 303, 308, 38 L.Ed.2d 260 (1973). So it is with RCW 15.40.030, for it is manifest that the proscriptions are so broad that even true, honest, and nondeceiving comparative references to the dairy term "butter" in informational advertisements of the Plaintiffs' products are made criminal acts.

We conclude and hold that the proscriptions of RCW 15.40.030 are more drastic and unreasonable than necessary to meet the legitimate interests of the State of Washington, and that the section, together with its sanctions, is per se violative of the Plaintiffs' First Amendment immunities and privileges and, hence, unconstitutional.

■ The Defendants vigorously argue that many of the Plaintiffs' margarine advertising comparative references to butter and other dairy products are false and deceptive in nature and context and, therefore, fall within the purview of the proscriptions of RCW 15.40.030 as a valid exercise of police power. We do not deem it necessary to either accept or reject that thesis for the plain and obvious reason that any claim that RCW 15.40.030 in any semblance meets federal due process requirements for a constitutional criminal prosecution for dissemination of false and deceptive information borders on frivolity.

Since this cause has been disposed of upon the First Amendment issue, and except for the specific references to the federal 1950 Oleomargarine Act and the due process requirements, we do not reach the Supremacy Clause, Commerce Clause, Due Process Clause or Equal Protection Clause issues tendered by the Plaintiffs.

The foregoing opinion constitutes this court's findings of fact and conclusions of law as provided by Fed.R.Civ.P. 52(a).

Counsel for the Plaintiffs is requested to prepare, serve on opposing counsel, and present to this court proposed order or orders of declaratory judgment, and if necessary, permanent injunctive enforcement thereof, in accordance with the foregoing conclusions and holding within 15 days from the date hereof.